BERRY & AL. *plaintiffs in error, vs.* CARLE.

Rivers and streams, above the flow of the tide, if they have been long used for the passage of boats, rafts, and timber, are public highways, and, like other highways, are to be kept open, and free from obstruction.

If the property of one person happen accidentally to lodge on the land of another, or in waters of which he has the control as his private property, the latter, in removing it from his premises, is bound to do it with as little injury as possible.

UPON a writ of error to the Court of Common Pleas, the case appeared to be thus:—

The action was trespass, brought by *Carle*, the defendant in error, against *Berry & al.* before a Justice of the peace, for taking and carrying away ten of his mill-logs. At the trial in the

the Court of Common Pleas, into which it came by appeal, before *Whitman* C. J. the original plaintiff proved that he and others, among whom was one *Tucker*, were owners of certain saw-mills on a certain fall on *Saco* river;—that the plaintiff's mill was on one side, and *Tucker's* mill towards the other side of the river; —that the owners of the mills had their respective parcels of logs above the mills secured in booms, for the purpose of being sawed at the mills;—that occasionally logs would escape from these booms, and lodge on the common dam, or among the drift wood above the dam;—that the original defendants, now plaintiffs in error, were employed in *Tucker's* mill as his servants;—that on the day alleged in the writ, being Sunday, a quantity of logs and drift wood, covering nearly three quarters of an acre, having accumulated above the dam, and that being the only day in the week when the mills were all stopped, and the water thereby raised so to enable them to turn over the drift stuff with convenience, the defendants turned it over the dam, with two of the logs in question; which being thus carried below the mills, were of less value to the plaintiff.

The original defendants proved that *Tucker's* mill was frequently injured, and its operations impeded, by the accumulation of drift stuff which floated into the floom;—that in several previous instances they had turned such stuff and drift logs over the dam, without notifying the other owners of mills; and that a similar practice had obtained at some of the mills on the other falls on the river. But this did not appear to have been the uniform usage at the mills in question. In some instances either notice had been given by an owner about to clear away the stuff, to the other proprietors, to secure their logs; or they had been detained for their owners, on such occasions;—and at the time stated in the writ the owners, had they been notified in season, could have secured their logs with very little trouble.

There was other evidence tending to prove that at that time there was no very great urgency for turning away the drift stuff, none being then in *Tucker's* floom;—that the plaintiff and other owners of the mills were near at hand, and might have been notified with very little trouble;—and that when the defendants had already made some progress in that work, the plaintiff requested

Berry *v.* Carle.

them to desist, which they refused. It also appeared that a considerable number of the logs thus turned down the river belonged to persons owning mills below, of whom *Tucker* also was one.

Upon this evidence the original defendants requested the Judge to instruct the jury that if *Tucker's* mill was injured by the accumulation of the drift stuff, they had a right to turn it over the dam, without notice to the other owners of mills on the same falls. But this the Judge declined; and instructed the jury that if they should find that the drift stuff and logs did impede *Tucker's* mill, yet the defendants were not justified in turning the plaintiffs logs over the dam, unless they should find it unavoidably necessary so to do, in order to free the mill;—that if with but little or no inconvenience they could have notified the plaintiff to take care of his logs, or could with the same facility have saved them for him, they were bound so to have done;—that the plaintiff apparently was not in fault on account of the situation of the logs, *that* seeming to be a casualty to which all owners of such property were liable;—and that though if the fault were the plaintiff's, the defendants might not be bound to exercise the same degree of care for the safety of his property; yet if no negligence was imputable to him, the case was merely that of one man's property accidentally intermingled with another's to his damage; in which case the party injured would not be justified in doing more damage to the property of his neighbor than was necessary to extricate or disembarrass his own. To this opinion the defendants filed exceptions, the verdict and judgment being rendered against them.

*Shepley,* for the plaintiffs in error, maintained the following points.

1. The river, though not navigable from the sea, is yet a public highway, by immemorial usage, common to all the citizens for the conveyance of their goods and lumber, without obstruction. 3 *Com. Dig. tit. Chimin A.* 1. *B.* 1. And even an uninterrupted usage of twenty years, is held to be evidence of this right. *Shaw v. Crawford* 10 *Johns.* 236. *Perley v. Chandler* 6 *Mass.* 454.

2. The logs and drift wood, accumulated against the mill, were a nuisance. 4 *Bl. Com.* 167. 3 *Bl. Com.* 216, 218. *Weld v. Hamley* 7 *East.* 195. The existence of the mills and dams make no difference, since these are lawful by common law, as recognized by the statute regulating mills, and from a legal modification of the public right to the use of the river. Even booms cannot be erected without leave of the legislature; and the grant of such leave shews that they would otherwise be nuisances. The public right, moreover, is the right of conveyance *per transitum,* not of deposit.

3. Being thus unlawfully deposited on the defendant's dam, and nuisances, they might well be abated, and that promptly, by the party injured. 3 *Bl. Com.* 5. *Arundel v. McCulloch* 10 *Mass.* 70. *Hodges v. Raymond* 9 *Mass.* 316. *Wales v. Stetson* 8 *Mass.* 143. *Com. Dig. tit. Action on the case for nuisance,* D. 4.

4. And this, too, without notice or request, and in the way most convenient to himself, without any reference to the convenience of the owner. If the law were otherwise, any one may obstruct the rivers at his pleasure; and to oblige persons, thus injured, to take care of the property of the wrong doer, is to impose on them a burden without remuneration. 5 *Rep.* 101, *a. James v. Hayward* Cro. Car. 133. *Lodie v. Arnold* 1 *Salk.* 453.

*Burleigh,* for the defendant in error, contended that the case disclosed sufficient evidence of a usage to give reasonable notice to the owners of logs before turning them over the dam; and that by such usage the defendants were bound. If not, yet to require this of the defendants would be nothing more than a reasonable application of the paramount rule of doing as they would that others should do in the like case. At most, the case was like that of the accidental escape of one's beast into another's close, or the breaking of his carriage on the highway; where no law can be found to justify the unnecessary injury or destruction of the property, by the party incommoded by it. *Bac. Abr. trespass E.* Cro. Car. 228. 2 *Roll. Abr.* 567. 11 *East* 568.

If it were a nuisance, yet the right to abate it instantly, and without notice, applies only to nuisances *wilfully* erected, and not to accidental occurrences, like the present.

Berry v. Carle.

But as the dam belonged as well to the original plaintiff as to the defendants, the logs were lawfully lodged there, at least so far as the defendants were concerned; and any removal by *them* was a trespass.

The cause being continued for advisement, the opinion of the Court was delivered at the ensuing *August* term in *Oxford*, by

Weston J. It is assumed in argument, by the counsel for the plaintiffs in error, that the *Saco* river, at the place where the logs of the defendant in error were found, is a public highway; and that, although he had a right to avail himself of that way, as a passage for his logs, yet he had no right to suffer them to remain stationary in the river; and that, being in that condition, and thus becoming a nuisance, the plaintiffs in error were justified in propelling them over the dam and along the stream; which was the injury complained of by the original plaintiff.

By the common law rivers, as far as the tide ebbs and flows, are public and open for the use and accommodation of all subjects or citizens, and any obstruction erected or continued therein is a common nuisance; and may be abated as such. So rivers and streams, above where the tide ebbs and flows, although the land over which they pass belongs to the owners of the adjoining banks, yet if they have been long used for the passage of boats, rafts, or timber, although they have not the character of public rivers, within the meaning of the common law, yet they thus become public highways, and, like other highways, are to be kept open and free from obstruction. *Sir Matthew Hale, de jure maris*, in *Hargrave's law tracts*, 5, 8, 9. *3 Caines* 307. 10 *Johns* 236.

In 4 *Burr.* 2164, *Yates* J. says " The cited cases prove this dis- " tinction, that navigable rivers or arms of the sea belong to the " crown, and not, like private rivers, to the land owners on each " side, and therefore the *presumption* lies the *contrary* way in the " one case, from what it does in the other." And he cited with approbation a case from Sir *John Davy's* reports, from which it appears that by the term navigable river is intended a river, where the tide ebbs and flows.

In the case of *Dunbar v. Vinal,* in the Supreme Court of *Massachusetts* in 1801, it was decided " that the *navigable waters* of the " country were a common privilege for passing upon them, and " that the plaintiff had no right to interrupt it by a dam." But in the case of *Spring v. Chase & al.* it was in 1799, decided by the same Court to be otherwise, where the party owns the ad-joining land, and no tide ebbs and flows. In that case the plaintiff, being the owner of the adjoining lands, erected a bridge over *Saco* river above, but near the great falls and above the tide waters. The defendants threw down the bridge as a nuisance, for which they were called upon to answer in trespass. The plaintiff had judgment because, in the opinion of the Court, there were not navigable waters, where the bridge was built; although the river was there convenient for boats and rafts, and for many miles above. These cases are not reported at large, but are briefly stated in 2 *Dane's Abridgement* 696. Notwithstanding the *Saco,* above the tide waters, may not be open to the public, as a high-way of common right, yet by long usage as such, it may acquire this character.

In the case before us, it is not stated as a fact that the *Saco* river is, at the place where the injury complained of was done, a public highway. It is above where the tide ebbs and flows; and it appears that it is obstructed by a dam quite across the river. We must be governed by the facts, as they appear in the excep-tions; nor can we assume any other, except such as we are judi-cially bound to regard. The facts are imperfectly exhibited if the river has, in the place in question, by long usage, the attributes of a public highway, and the ground taken by the counsel for the plaintiffs in error is therefore insufficient to entitle them to a reversal of the judgment.

But if the *Saco* is at that place to be deemed a public highway, it is by no means clear that the plaintiffs in error, under the cir-cumstances of this case, had a right to treat the original plaintiff's logs, in the manner they have done. *Tucker,* one of the plaintiffs in error justifies, and the others under him, not because the orig-inal plaintiff's logs were found in the river, but because they were stationary there to his annoyance. They were stationary, because arrested in their progress by an obstruction placed there,

Berry *v*. Carle.

by the concurrence and for the convenience of both the defendant in error and *Tucker*. If they happened to lodge on *Tucker's* land, or in waters of which he had the control, as his private property, they could be removed only with as little injury as possible, and the jury found, under the direction of the judge, that they might have been saved to the original plaintiff with little inconvenience to the original defendants.

The exceptions are overruled, and the judgment of the Common Pleas affirmed, with costs for the defendant in error.