# CHAMBERLAIN vs. MIL. & MISS. R. R. CO.

APPEAL FROM CIRCUIT COURT, MILWAUKEE COUNTY.

Heard April 13.]                                    [Decided June 4, 1860.

*Master and Servant—Railroads—Employer and Employee —Negligence.*

A messenger of an express company who was entitled to be carried on the freight cars of a railroad, was employed by the superintendent of the road to act as a brakeman for one trip, and while so employed, was, by the negligent conduct of the engineer thrown from the cars and greatly injured, for which he brought an action against the railroad company. Held, that the action would lie, whether

he were to be considered as a passenger or employee of the company on that train.

If a passenger on a railroad train be in an improper place for a passenger, though a proper one for an employee, and there be injured through the negligent conduct of an employee of the company, yet if he were engaged at that place at the request of the railroad company, the company is not thereby relieved from their liability for the injury sustained by the passenger, who was using reasonable care and diligence for that position, though in the execution of a duty necessary to be done by an employee of the company.

An employee can recover of his employer, for an injury occasioned by the negligence of another employee engaged in the same business, upon the general rule, that every person is responsible for injuries occuring to others by the negligence of his servants, while in the execution of his employment.

Where the servant of a railroad company who was injured, was himself engaged at the immediate point where the negligence occurred, by which the injury was caused, that fact might furnish some grounds to implicate him in the negligence; but where he was engaged in a different department, or where he performed his whole duty with skill and care, it seems entirely immaterial whether he was injured by the negligence of one working in the same department, or in another, The company is held liable, because it has set a force in motion, to be used for its own benefit, and it is bound to see to it, that it is employed with proper care and skill.

A servant of a railroad company does not in undertaking his business agree to assume the risk of negligence as well as others; but on the contrary he assumes only such risks as are incident to the employment, or as necessarily attend the business, when conducted with ordinary care and prudence.

Public policy requires that the employees of a railroad company should receive the same protection against injury by other employees, which the law affords to every other person; for if the liability of the employer for the negligence of his servants is reduced, so the motives will be diminished which induce him to employ servants of the greatest skill and vigilance, and the hazard of the public will be increased thereby.

The facts in this case are sufficiently stated in 7 Wis. Rep., 425, when it was before this court on an appeal, and a new trial was ordered. The exceptions and points now made depend entirely upon the charge of the circuit judge given to the jury on the trial. He first instructed the jury as follows:

"This is an action to be tried as any other action; the plaintiff seeks to recover for an alleged injury which he has sustained on the cars of the defendants. The plaintiff claims that he was at the time in the employ of James Holton & Co., as express messenger for them, and that by an agreement be-

tween James Holton & Co. and the defendants, he had the right to go and be on the train, and that the defendants were bound to carry him safely and securely as a passenger on the train. A common carrier of passengers for hire is undoubtedly bound to the highest degree of care, and must do every thing that human foresight and human wisdom can foresee, to guard against accidents and prevent injury to his passengers. His employees must be men of skill and prudence; his vehicles must be properly and strongly built for the business intended; in short, he must use every degree of care and prudence, both in the construction of his vehicles and in the agents that he employs; and he is liable to a passenger injured, if in any or all of these essentials he is in the slightest degree careless or negligent. The company were bound by that contract to carry the plaintiff on that train as Holton's express messenger. The plaintiff, by contracting to go on the freight train, was entitled to no more care and accommodation for his safety than that which the defendants usually employed on trains of that sort. It is contended by the defendant that at the time of this injury the plaintiff was in their employ as brakeman, and that being thus employed, he cannot recover for an injury which he might receive while thus employed, although the same was received by or through the carelessness or negligence of the servants of the defendants. There appears to be a great weight of authority, and from courts of the highest respectability, and sanctioned by eminent jurists, to sustain this position, and I consider it too well settled to be doubted. And I charge you that if you find from the evidence that the plaintiff was, at the time he received the injury, in the employ of the defendants as brakeman, and received the injury while thus employed, even through the carelessness or negligence of the servants or employees of the defendants, that the plaintiff cannot recover.

If you find the plaintiff, by the request of Merrill, the Superintendent, consented to act as brakeman of that train to Madison and back, and that the plaintiff entered upon that duty, and while so acting, the injury complained of occurred, then I charge you that he was in the employ of the railroad company as their servant, and being such, cannot recover for injury resulting from the carelessness of the other employees of the company.

If you find these facts, the plaintiff was in the employ of the company as much as any other of the servants of the

company in that train. So that his carelessness or negligence in the capacity of brakeman, producing damage to third persons, would make the railroad company responsible for his acts, and it would make no difference, in my opinion, whether he was to receive pay for his services by express promise or not.

"While acting as brakeman he was not acting as express messenger, unless you find that the proper place for such messenger was handling the brakes upon the top of the cars.

"As brakeman, he would be the servant of the company, and not of Holton & Co. If you find, then, that the plaintiff, being in the employ of Holton & Co., as express messenger, consented to act, by the request of the proper authorities of the railroad company, as brakeman upon the train, and did so act, then for such time he voluntarily abandoned the service of Holton & Co., and became the servant of the railroad company, and while so engaged, the injury complained of occurred, he cannot recover.

" If the jury find that the plaintiff was a passenger on the cars of the defendant, and being such, was injured by the carelessness or negligence of the servants of the defendant, without his own fault, then the plaintiff is entitled to a verdict for such damages as he has suffered.

" But if you find that he was not in the usual place of the passenger upon the cars, or if a passenger as express messenger in the proper place of such messenger upon the freight cars, and the place he was in, at the time of the injury, was a hazardous one, in which no prudent passenger or express messenger should be, and in consequence of his being thus out of his proper place, and in an improper place, the injury occurred—then the injury resulted from his own carelessness, and the defendant is not liable. If as a passenger, at the request of the employees of a railroad company, he became a brakeman, and stood upon the top of the cars to discharge that duty, instead of being in the usual and proper place of passenger, and for that reason is injured, he must be treated as having voluntarily placed himself in the place of danger, and his having been requested to do so, unless he was absolutely compelled to do so, would make no difference.

" If as a common passenger, or as express messenger, he was requested by the authorized authorities of the railroad company to place himself in any other position than the us-

ual or proper place of the passenger or messenger, and to place himself in a position of great danger, he was under no obligation to comply with such request, and could have refused to leave his proper place as passenger, and his complying with such request must be considered voluntary.

" The supreme court, in their opinion upon this case, decided as follows: ' The proof shows that he, the plaintiff was in a hazardous position, at the request of the Deputy Superintendent Merrill, and if, while in this position, exercising ordinary care and diligence, he was injured by the carelessness and negligence of the servants of the company, he is entitled to damages. But he should show that his own negligence did not, in any way, contribute to produce the injury.'

" This is saying, in effect, as I understand it, that if the plaintiff had placed himself in a hazardous position at the request of the defendant, that the company would be liable for damages, if he was injured by the negligence of the employees of the company, while in that hazardous position, if his own negligence did not in any way contribute to produce the injury.

" This does not preclude, in my opinion, but sanctions the consideration of the fact, that the plaintiff voluntarily, even at the request of the railroad company, might be chargeable with negligence in thus placing himself in this hazardous position. It does not assume, as I understand it, that placing himself in a dangerous position at the request of the railroad company, and in consequence he was injured, that the railroad company must be liable, but leaves it a question for the jury to determine whether his thus placing himself in such a position, at the request of the company, was, or was not his own negligence, that might take away the liability of the company."

To which charge and instructions so given by the court, and every part thereof, and each and every sentence and paragraph thereof, the plaintiff did then and there except.

The plaintiff asked the court to charge the jury:

1    That if the jury find from the evidence that the plaintiff at the time the accident occurred, was in a hazardous position at the request of the deputy superintendent, Merrill, and that while in that position, exercising ordinary care and diligence, he was injured by the carelessness and neg-

ligence of the servants of the company he is entitled to recover.

Which charge the court declined to give as requested, but gave the same with the qualification that the jury may take into consideration whether his thus placing himself in this hazardous position was not his own carelessness.

2d. That if the plaintiff (being a minor) was in the employ of Holton & Co., and upon the train legally as express messenger, and discharging the duties of express messenger, and if while so there he performed casual services for the defendant, whether on promise of pay or not, he remained, and was legally the servant of Holton & Co., and not of the defendant.

3d. That if the defendant, as common carrier, made a contract with Holton & Co., to carry their express messenger, in order to take charge of express matter, &c., and then hired the plaintiff by the month, to act as express agent, and if the plaintiff was a minor, and the father consented to his being so employed, and if the defendant, knowing that he was so in the employ of Holton & Co., and that in such case he ought to be in the car where express matter was carried, hired or seduced the plaintiff to perform services for them inconsistent with his duty to Holton & Co., such hiring is illegal; and that by such illegal hiring the defendant not only could not protect himself against the liability safely to carry the express messenger before assumed, but is so liable to damages to Holton & Co.

4th. That although the plaintiff might have been in an improper place for a passenger, yet if he was there at the request of the company, the company is not thereby relieved from liability for the accident to the plaintiff.

Which instructions the said court refused to give; and the plaintiff excepted. And the court did then and there further instruct and charge the said jury as follows:

" I take it that if a passenger is requested by the superintendent of a railroad, or the conductor of a train, to put himself upon the platform, or to hang himself off from it, and he voluntarily does it, and falls off or is injured while there by such request, he cannot recover for such injury, because it would be his own negligence to comply with such request."

To which charge, ruling and decision of the said court, the said plaintiff excepted.

The defendants, by their counsel, requested the court to give the following instructions to the jury, viz.:

1st. That the burden of proof is with the plaintiff, and he must show affirmatively that he was injured solely by the carelessness and negligence of the defendant.

2d. That proof that the plaintiff was injured by or through carelessness or negligence of the defendants, will not make out a *prima facie* case.

3d. That if the injury was occasioned in part by the negligence of the plaintiff, and in part by the carelessness and negligence of the defendant, the plaintiff is not entitled to recover.

4th. That the jury, in determining whether the defendant exercised ordinary care and prudence in the management of said freight train, are at liberty, and in fact must consider all the circumstances by which the accident happened; and for that purpose must take into consideration the nature of the business in which the train at the time was engaged.

5th. If the jury believe, from the evidence, that the injury occurred entirely from accident, and not by the want of exercise of ordinary care and prudence on the part of the defendant, their verdict must be for the defendant.

6th. If the jury find that the injury was occasioned by the coming together of the cars after the steam had been shut off, in obedience to the signal of the plaintiff to stop the train, their verdict must be for the defendant.

7th. That affirmative testimony is, in law, of more weight than negative testimony, and in a case of doubtful or conflicting testimony, the jury are bound to consider affirmative testimony of greater weight and more reliable than negative testimony.

8th. If the jury find, from the evidence, that the plaintiff, at the request of the officers of the company, voluntarily consented to act as brakeman on the train, for pay, and that said request was accompanied with a promise to pay for the said braking of the train, and he received the injury complained of while thus acting under such arrangements, through the carelessness or negligence of the servants or employees of the defendant on the same train, that then their verdict must be for the defendant.

9th. If the jury find, from the evidence, that a train of cars was at the depot at Milwaukee, ready to start for Madison, and which train was short one brakeman, and the defendant, through their deputy superintendent, S. S. Merrill, knowing that said plaintiff was going on said train, did, before the

starting of said train, go to said plaintiff, and say, "Will you brake the train out this trip, if I will pay you?" or words to that effect; and that said plaintiff replied that he would; and that at the time of stating of said train, and until the happening of the alleged injury, the said plaintiff was at the brake, and discharging the duties of brakeman; that this was in law a contract to act for pay—to act for pay as brakeman on that train; and if the plaintiff was injured while thus acting as brakeman on said train, by the carelessness or negligence of the servants or employees engaged on the same train, their verdict must be for the defendant.

10th. If the jury find, from the evidence, that the superintendent or deputy superintendent of defendant, prior to the starting of said train, went to said plaintiff and said, "Will you brake out the said train for this trip, and I will pay you?" or "If you will brake out this trip, I will pay you?" or words to that effect, and that the said plaintiff did, immediately upon the starting of said train, take his position at the brake, and continued during the whole trip to occupy that position, and was then at the brake, and discharging his duties as brakeman, that this was in law a contract between the defendant and the plaintiff, by which the plaintiff was for pay to perform the duties of brakeman, and if injured while performing the duties of brakeman, through the carelessness or negligence of the other servants or employees on said train, their verdict must be for the defendant.

11th. If the jury find that the plaintiff had agreed to brake the said train for him, and was injured in the performance of that duty by or through the. carelessness and negligence of the servants or employees on said train, that he cannot recover under the pleading in this action.

12th. If the jury find that the plaintiff had agreed to brake the said train for him, and was injured in the performance of that duty, by or through the carelessness or negligence of the servants or employees on said train, that he cannot recover under the contract with Holton & Co., to carry him as express messenger.

Each of which instructions the court did charge and give to the jury, and to each of which the plaintiff did then and there except.

The jury returned a verdict for the defendant, and the plaintiff took an appeal.

*Brown & Ogden,* for the appellant.

The well established doctrine of the common law is, that the master is responsible for all injuries to others happening through the neglect of a servant in the course of his employment; and we maintain that the common law on that subject always has been, and by the provision of the constitution hereinafter referred to, continues to be in force in this state. Reeves on Dom. Rel., 356; 2 Blackstone, Com., 443; Con., Art., 14, § 13.

Both in Ohio and Indiana the common law on this subject is followed. *Little Miami R. R. Co., vs. Stevens,* 20 Ohio, 415; *C. C. & C. R. Co., vs. Keary,* 3 O. St., 262; *Gillenburg vs. Mad. & Ind. R. R.,* 5 Ind., 340; *Fitzpatrick vs. M. A. & S. R. R. Co.,* 7 Porter, Ind., 336.

*Finches, Lynde & Miller,* for the defendant.

The plaintiff received the injury complained of while acting as brakeman on the train. He was, at the time he received the injury, an employee of the defendants. He had consented and agreed to discharge the duties of brakeman for that trip, and was at the brake, and discharging that duty, at the time he received the injury. Being thus situated, he could maintain no action against the defendants for the alleged injury.

The rule of law is well settled " that one servant or employee can maintain no action against his principal for injuries which he has or may sustain by or through the carelessness or negligence of another servant in the employ of the same principal, and while engaged in the same common service." *Priestly vs. Fowler,* 3 Mess. & Wels., 1; *Hutchinson vs. The York R. R. Co.,* 5 Exch., 344; *Wigmore vs. Jay,* 5 Id., 355; *Skip vs. Eastern Counties R.,* 24 Eng. L. & E., 396; *Murray vs. S. C. Railroad,* 1st McMul., 285; *Mitchell vs. Penn. R. R.,* 1st Am. Law Reg., 717; *Ryan vs. Cumberland R. R.,* 23 Penn., 384; *Farwell vs. Boston & W. R. R. Co.,* 4 Met., 49; *Hayes vs. Western Railroad,* 3 Cush., 270; *Albro vs. Agowan Canal Co.,* 6 Cush., 76; *King vs. Boston & W. R. Co.,* 9 Id., 112; *Gilshannon vs. Stony Brook R.,* 10 Id., 228; *Hosmer vs. Ill. Central,* 15 Ill., 550; *Coon vs. Schenectady R.,* 1 Selden; *Maxwell vs. Brown,* 6 Hill, 594; *Sherman vs. The R. & S. R. Co.,* 17 N. Y., 153; *Russell vs. Hudson R. R. Co.,* 17 N. Y., 134; *Boldt vs. N. Y. Cent. R. Co.,* 18 N. Y., 432.

*By the Court,* PAINE, J. Assuming the appellant to have been a passenger upon the cars at the time of the injury complained of, we think the refusal of the court below to give the 4th instruction asked by his counsel, which was, that if the plaintiff was " in an improper place for a passenger, yet, if he was there at the request of the company, the company was not thereby relieved from liability " &c., together with the remarks of the court in connection with such refusal, was calculated to mislead the jury. Perhaps the instruction as an abstract proposition, was not entirely accurate. Because if a passenger, at the request of the conductor, should take a seat on the cowcatcher, or hang himself from the platform, if injured while in that position, it is clear that the request of the conductor, would not relieve his act of that reckless negligence which would preclude his recovery. Yet we think this is very different from taking a place, which though ordinarily improper for a passenger, for the reason that men are employed by the company for the special purpose of fulfilling its duties, is yet not strictly speaking an improper place in itself, but on the contrary is one which some one must take, to fulfil a necessary duty. If by reason of any accident or otherwise, the brakeman upon a train should be disabled, and a conductor should request a passenger to perform the duty, we think he is at liberty, if he chooses, to do so. And it being a thing proper and necessary to be done, if while performing it with such reasonable care and vigilance as are consistent with the nature of the duty, he is injured by the negligence of the persons managing the train, we do not think the mere fact that he was in a more hazardous position, than he would have been in his seat, should be submitted to the jury, as proper grounds for imputing to him such negligence as would prevent his recovery. The question should be, was the place proper to be taken by any person; were the circumstances such as justified the passenger in taking it, and if so,

did he exercise reasonable care and prudence while in such position. The only reason for imputing negligence to the plaintiff, being that he was in the position of a brakeman at the time of the injury, which was a hazardous position. We think the court below mistook the former decision of this court when it refused the instruction alluded to, which may be said to be correct as applicable to the facts proved, and submitted it to the jury to say whether his being in that position was not in itself the very neglignce which this court had said might defeat the action. And as it is impossible to say upon what grounds the jury may have found their verdict, we must reverse the judgment for this reason.

But the most interesting question in the case grows out of the disputed point, whether the plaintiff should be considered at the time of the injury, as a passenger or as an employee and servant of the company. There was testimony to the effect that he had been employed for wages, to act as brakeman during that trip. And he was injured while acting in that capacity. If the jury found that he was so employed, there seems to be no reason why he should not be considered as having been injured while acting as a servant of the company. There was no impossibility in his acting in the two capacities during the trip. And if the law applicable to an injury occurring in the one, is different from that applicable to an injury in the other, the law of the case would depend upon the capacity in which he was acting when injured. If as Holton's Express agent, he was a passenger and would be entitled to recover for a negligent injury, as brakeman he was a servant of the company, and would not be entitled to recover for an injury while acting as such, provided the law be as assumed, that one servant cannot recover for an injury occasioned by the negligence of another. And we think there is nothing in the former decision of this court in this case, 7 Wis., 425, inconsistent with this view. It is true the

court made the following remark: " The proof showed that he was in a hazardous position at the request of the deputy superintendent Merrill, and if while in this position exercising ordinary care and diligence, he was injured by the carelessness and negligence of the servants of the company, he is entitled to damages." And it is stated in the report that it appeared, that the plaintiff was employed as brakeman, and if the remark just quoted is to be construed as applicable to that state of facts, it must indicate either that the court did not think such employment would constitute him a servant of the company, or else that he might recover notwitstanding he was a servant. But we think that a careful examination of the concluding portion of the opinion will show, that the remark above quoted, was only made upon the hypothesis that the plaintiff was to be regarded as a passenger, because the court says that the company contended, that the proof showed that the injury happened while the plaintiff was acting as a servant, and that if so he could not in law recover, and then they answer this proposition by saying that the court so charged the jury, and therefore upon that point, the company had nothing to complain of. And this shows that the prior remarks were upon the assumption that the finding of the jury had negatived this claiming of the company, that he was acting as servant.

It seems therefore necessary for us to determine whether the law is as claimed by the company, that one servant cannot recover of his employer for an injury occasioned by the negligence of another servant engaged in the same business. From the head note to this case, when it was here before, it would appear that this court had then decided the question in the negative. But from an examination of the case, we do not think it can be said to have that effect. On the contrary, this point of law seems not to have been contested there; probably for the reason that the plaintiff's counsel re-

lied on the peculiar facts in the case, to make it an exception to the rule claimed, rather than on a denial of the rule itself. Such being the case, the court was not called on to examine the question, nor does the opinion assume to examine or decide it. The court only says, in answer to the claim by the company that such was the law, that the court below so instructed the jury, and therefore the company had nothing to complain of. We cannot therefore regard this question, which had not before been decided in this state, and is one of deep interest, as settled by that decision, and Mr. Justice Cole, by whom the opinion was then delivered, does not so regard it.

The general rule is conceded, that every person is responsible for injuries occurring to others by the negligence of his servants, while in the execution of his employment. This rule settles the question, unless the fact that the person injured is also a servant of the same employer, is just ground for making it an exception. That the majority of the cases which have passed upon the point, both in this country and in England, have recognized this as an exception, cannot be denied. And if it is only the duty of a court to count the cases on each side of a question, and decide in favor of the majority, this matter could be very readily determined; though upon some questions, with the rapidity with which judicial decisions are multiplying, this rule might require considerable arithmetical capacity. But if the reason of the law be the soul of the law, and such we understand to have ever been its proudest boast, then a court has, although a more difficult, yet a more worthy task, and has not only to count but to weigh the cases, and by this test the majority do not always rule. And such we think to be the result here.

The question has been very thoroughly examined in the following cases: *Gillentwater vs. The Madison & Indianapolis R. R. Co.*, 5 Port. (Ind.,) 339; *Fitzpatrick vs. New Albany*

*& Salem R. R. Co.*, 7 id., 436; *Little Miami R. R. Co. vs. Stevens,* 20 Ohio, 415; and *Railroad Company vs. Keary,* 3 Ohio St. Rep., 201. The law of Scotland upon this subject, which is also referred to in these cases, is more fully stated in *Dixon vs. Rankin,* found in 1 Amer. R. R. Cases, 569. As a matter of principle we concur fully with the reasoning of the Scottish justices, which is such as should commend itself to every right thinking mind and every right feeling heart. And the general reasoning by which the courts of Ohio and Indiana sustain the liability of the company in each of the particular cases mentioned, is of the same character. But in the cases in Indiana the servant injured was not engaged in the same department of business, as the one by whose negligence the injury was caused; and the court states this as a reason for distinguishing them from those which had decided against any liability. While the cases in Ohio, which are themselves authorities against this distinction, profess, or at least the later cases do, to recognize another, and while holding the company liable for an injury to a subordinate, occasioned by the negligence of his superior, admit that such liability would not exist, when the one injured occupied the position of an equal in the employment, with respect to the one causing the injury. While recognizing therefore, the reasoning of these courts, as stating clearly the grounds upon which liability in such cases rests, we shall attempt to show that that reasoning is entirely inconsistent with the distinctions they profess to admit, and necessarily. establishes the liability without reference to those distinctions. And that the latter must have been suggested out of deference to authorities, from which they did not care to depart, further than the facts of the case made necessary.

And first, as to the distinction suggested by the cases in Indiana, exempting the principal from liability where the negligence was committed by a servant working in the same de-

partment as the one injured.   Can this be sustained without overturning the very principles on which the court sustained the liability, where the negligence occurred in a different department?  We think not. The only view in which that circumstance should be material would seem to be this.   Where the servant injured was himself engaged  at the immediate point where the negligence occurred, that might furnish some grounds to implicate him in the negligence.  And for the purpose of  determining whether his own negligence contributed to the injury, it would  be proper  to inquire whether he was working at the point where it occurred.   But, conceding the one injured to have performed his whole duty with skill and care, it seems  entirely immaterial whether  he is injured by the negligence of one working in the same department or in another.   The company is held liable, because, in setting a force in motion, to be used for its benefit, it is bound to see to it, that it is employed with proper care and skill.   But does not this obviously extend to the different duties in the same department, as well as to those of different departments ?  The great object of this common law principle is not to protect those in one department as against those in another, but to protect every one from injury by the negligence of another. Now, the court classes all whose duties are connected with the running of the cars, as engaged in the same department. Yet, everybody knows that this department requires various duties entirely separate and distinct in their character.  So that a servant performing one, can, by no just reasoning, be held responsible for the negligence of another.   A brakeman has to act in obedience to signals by the engineer ; but he has no connection whatever with the performance of the duties of the engineer.   Where it is conceded  therefore  that the company is bound to  conduct  the force  it sets  in motion with proper care and skill, upon what principle can it be maintained, that they  may, through their engineer, so negligently

manage the engine, as to mangle the brakemen and all their other servants on the train, and yet be entirely irresponsible ? In our judgment no rational answer has been or can be given to this question.

It has been said that the servant, in undertaking the business, has, by his contract, agreed to assume all risks; that of negligence as well others. But the court of Indiana justly repudiates this idea. It says: " True, there are authorities for the position, that when a party contracts to perform services, he takes into account ' the dangers and perils' incident to the employment, but this can only be intended to mean such ' dangers and perils' as necessarily attend the business when conducted with ordinary care and prudence. He cannot be presumed to contract with reference to injuries inflicted on him by negligence."

That court therefore, would not sustain their distinction, by which a servant would be remediless for an injury by the negligence of another in the same department, on the ground that by his contract he had assumed the risk of such negligence. They say he does not contract with reference to any injuries to be inflicted on him by negligence. They therefore deprive themselves of all support for their distinction from one of the strong grounds relied on by all the cases, in favor of the exemption from liability.

The only other ground upon which this exemption is claimed at all, is that public policy requires it. It is rather faintly suggested by the court of Ohio, in *Railroad vs. Keary*, that " public policy may be concerned in their keeping a supervision over each other," &c. And if this is true, then the distinction between those serving in different departments might be valid, for the reason that those in the same department might supervise each other, and not those in other departments. But there seems to be no solid foundation for the idea that public policy requires this exemption. The only

possible ground upon which it could rest, would be the supposition that employees upon railroads and other improvements which the public use, would be more vigilant to prevent injuries from the negligence of each other, if they knew they could not recover damages against the company, than they would with the opposite belief. But this notion is based upon a false estimate of the motives which govern human action. The lives and limbs of these employees are at hazard along with those of the public, and all human experience and consciousness, abundantly testify that to the motives which these furnish, the right to an action for damages could add nothing. There seems, therefore, no reason for sustaining the doctrine upon that ground. In truth, the argument to be derived from public policy is the other way. *First.* These employees are a portion of the public, and the safety of the rest not requiring it, there can be no just reason for excluding them from that protection, which it is the policy of the law to furnish to every one, against injury by the negligence of others. *Next,* by just so much as the liability of the employer for the negligence of his servants, is reduced, by just so much are the motives diminished which induce him to employ servants of the greatest skill and vigilance. And if from this relaxation, negligent servants are employed, the public at large, as well as the other employees, run the hazard of the calamities arising from it.

And it is proper, in connection with this view, to consider the suggestion made in some of the cases, that an employee, where he sees that other negligent persons are employed, may leave the service. This suggestion is made in *Farwell vs. Railroad Co.,* 4 Met., 59. Now suppose this view practically carried out, those employees who are themselves vigilant and attentive, find that there are some others negligent or reckless. The law furnishes them no protection against injuries by these, and the employer not being liable except as to the pub-

lic, chooses to run the risk. The prudent and faithful serv-
ants, in obedience to the advice of the supreme court of
Massachusetts, leave the service. What position would the
public then be in? The faithful, careful servants have left
in obedience to the law, whose policy would not protect them
by holding their employer, under the strongest possible in-
ducements, to employ the most faithful and careful servants
with them, and so by the operation of public policy, the pub-
lic are left to the mercy of the negligent. This doctrine, there-
fore, seems to rest only on a purely imaginary influence of
the absence of any right of action to create additional vigil-
ance on the part of employees, while it overlooks the real in-
fluence which the liability to an action has upon the com-
pany, to induce it to employ the most skillful and careful serv-
ants. And, indeed, this suggestion of public policy seems to
have been made with some hesitation in the later cases, while
following the English cases, which first established the ex-
emption from liability upon other grounds.

In *Priestly vs. Fowler* 3 M. and W., 1, which was the first
case upon the subject although the court dwells upon the in-
convenience which masters might suffer, they do not place
their decision upon public policy. And such a suggestion
would have been somewhat ludicrous in that case, as it is
difficult to see how public policy could be very deeply inter-
ested in the loading of a private cart.

We think, therefore, that the cases in Ohio and Indiana,
following the dissenting opinion of Judge O'Neal, in the case
in South Carolina, 1 McMullan, have overturned the only
two grounds upon which this exception has ever been placed,
and having overturned them, they leave no foundation for the
distinctions which they admit.

Thus the cases in Ohio ignore the distinction implied in
Indiana, and hold the company liable to the engineer for the
negligence of the conductor, though both were in the same

department. But then they place it upon the ground that the engineer was subordinate to the conductor. But what bearing does that have upon the principles upon which they assert the liability? None at all that we can possibly discover. They hold the company liable, because having set a force in motion for their own benefit, they are bound to see that it is conducted with proper care and skill, so as not to injure others. In order to do that, it is necessary that proper directions should be given. And if the company choose to give these directions through a conductor, and he was negligent, that was their negligence, and they had failed in their duty, and should be responsible. But if these principles are correct, as they undoubtedly are, is it not equally clear that, in order to manage the force which they have set in motion properly, that proper directions must be properly executed as well as given? This is too obvious for question. Can the same court which has said to one brakeman that the company is bound so to manage the force it sets in motion, as not to injure him by negligence, and has given *him a judg*ment for the negligence of the conductor, with any consistency say to another who has been injured by the negligence of the engineer, that he cannot recover, because he was not subordinate? Suppose the conductor himself, having used every care and vigilance, is injured by the negligence of the engineer, whom he did not employ, but the company did; is he without remedy? If so, the court must abandon its general principle, that he who set a force in motion, is bound so to control it as not to injure others. That principle and the distinction cannot both stand. For the question whether the one injured stood in the relation of equal, subordinate, or superior to the one whose negligence committed the injury, except so far as it might tend to show whether his own negligence contributed thereto, is entirely immaterial.

We are satisfied, therefore, that the general principles of the

common law sustain this liability, and that those cases which have attempted to establish an exception, do not rest upon solid ground. If the plaintiff was injured by the negligence of the engineer, even though he was at the time a servant of the company, he himself being guilty of no negligence, which contributed to the injury, he is entitled to recover.

For these reasons the judgment must be reversed, and the cause remanded for a new trial.


COLE, J.   I do not wish to be understood as expressing any opinion whatever upon one question so fully discussed in the opinion of Justice Paine, filed in this case, namely, as to whether one servant or employee can maintain an action against his principal for injuries which he has sustained by or through the carelessness of another servant, in the employ of the same principal, while engaged in the same common service. I think the case should be reversed, for the reason that the circuit court improperly instructed the jury as to the effect and meaning of the former decision. I did not suppose the language used in that decision could be misunderstood, or could fairly have the construction which the circuit judge placed upon it. Certainly, the qualification or proviso added to the language of that opinion was not in my mind when I prepared it. If the opinion is considered with reference to the instruction before us on that occasion, the meaning will be obvious.

· But whether the appellant could recover if it appeared that he was an employee of the company at the time he received the injuries complained of, I will express no opinion. That is a very interesting and important question, which I have not had time fully to consider; and the decisions upon that point, in this country and in England, are quite unanimous

that a recovery could not be had under such circumstances. But whether these decisions rest upon sound reason and an enlightened public policy, I will not now undertake to say.