The Ohio and Mississippi Railroad Company *v.* Hammersley.

------------------------◦------------------------

THE OHIO AND MISSISSIPPI RAILROAD COMPANY *v.* HAMMERSLEY.

RAILROADS.—EVIDENCE.—In a suit by a father for an injury to his minor son, it was held that the declarations of the son, made the day following the injury, as to the cause of the accident, were not admissible against the plaintiff.

SAME.—INJURY TO SERVANT.—A minor son of the plaintiff was, with his consent, employed to go upon a construction train to furnish water to the laborers at the points where they stopped for labor. The son was also, at times, with the father's knowledge, employed as brakeman and fireman upon the train. By the negligence of the person in charge of a

section of the road, in not signaling the train, it ran off the track at a curve, where the rails were being elevated.

*Held,* that the rule *respondeat superior* applies only to actions sounding in tort, and that where the relation of master and servant exists, the duties and liabilities of the parties must be determined by the contract.

*Held,* also, that where one accepts a situation in which he must, of necessity, be exposed to injury by any want of care on the part of his fellow-servants, he must be held to have made his contract in view of such hazard, and cannot recover for an injury thus caused, unless by express contract the master has made himself an insurer, or unless the master has failed in his implied obligation to employ competent fellow-servants.

*Held,* also, that as to injuries resulting from other causes than the ordinary hazards of the employment, the servant stands towards the master as a stranger.

*Held,* also, that the company was not liable in the case stated.

APPEAL from the *Martin* Circuit Court.

RAY, J.—This was an action by the appellee to recover for the death of his son, a minor, caused by the negligence of the appellant.

Among other defenses, the appellant answered that the deceased was in the employ of the railroad company, and that his duties were to furnish water to the other servants employed on a construction train, and that in violation of the known rule of said appellant, he took a position upon the engine drawing said train, and that by reason of the position so occupied the injury resulted, and without the fault of the appellant.

On the trial, the appellant offered a witness to prove that the deceased, on the day following the injury, stated that he knew he was acting in violation of orders, in riding on the engine at the time he was injured, and that if he had not been thus acting contrary to appellant's regulations he would not have been hurt. It was sought to introduce this as an admission by the boy. The court excluded the evidence. This, it seems to us, was correct. The suit was brought by the father for loss of service and for expense incurred by reason of the injury. This cause of action the boy could not admit away, nor could he, without regard to the question

of minority, have released the company from any liability incurred by it to the father.    Had he lived, he would have been a competent witness to prove the facts, but his previous admissions could only have been given in evidence to impeach his testimony.    Had the action been prosecuted by the son, the statement would have been properly introduced as an admission against himself.

Under the most favorable view of the evidence given on the trial, the following facts were established: The deceased was employed to go upon a construction train, or train for the repair of the track, and furnish the hands employed on the train with water, at the points where the train was stopped and the hands disembarked for labor.    The boy had also been employed, with the knowledge of his father, who was engaged on the construction train, and without his objection, as the father states, "frequently as fireman, sometimes as brakeman, and sometimes he helped to water the engine."    The accident was caused by the engine and a number of the cars running off the track at a point where the rails were being elevated at a curve on the line of the road, and this resulted from the negligence of the person in charge of the section hands, in not sending out a signal flag. There was a finding for the appellee, and over a motion for a new trial, judgment was rendered upon the verdict.

We know of no rule of law by which this recovery can be sustained.    The rule *respondeat superior* can only be applied in an action sounding in tort, and not where the liability arises out of contract.    Where a servant, engaged in his proper employment, and acting within the scope of his authority, injures a stranger, the master is responsible, for the act, being done by his agent, is held to be his act. But this liability does not grow out of contract.    The form of the action at common law is trespass on the case. But when the relation of master and servant exists, the duties and liabilities resulting are to be determined from the contract of employment. Thus, it must be implied that one in accepting a situation surrounded by known dangers, ex-

acts compensation for the hazard he incurs, and he cannot, unless by express contract, hold his employer as an insurer against dangers known alike to both servant and master, and against which the employed can perhaps more fully protect himself than he could be protected by the master. When, therefore, one accepts a situation in which he must of necessity be exposed to injury by any want of care on the part of a fellow servant, he must be held to have made his contract in view of such hazard, and unless he by express stipulation, makes the master an insurer against such injury, he cannot recover by virtue of his contract, and we know of no well considered case which sustains a recovery in an action sounding in tort. The servant, indeed, has the right to expect that the master will select prudent and careful fellow workmen, and any failure to do this may render the master liable for injuries resulting from such failure; for such neglect would be a breach of the implied terms of the employment, and a fraud upon the servant, for it would increase the ordinary dangers of the situation, against which alone he is supposed to have compensated himself by his contract. As to all injuries, therefore, resulting to the servant from the ordinary hazards incident to his employment, the master is not liable. As to injuries resulting from any other cause, the servant stands towards the master as towards a stranger.

The entire current of authority, and indeed all the cases, if we except the single one of *Chamberlain* v. *The Milwaukee and Mississippi Railroad Co.*, 11 Wis. 238, which, as appears by the decision, rendered, indeed, by a divided court, was ruled regardless of authority, and, as we think, of principle, have established the doctrine that, as a general rule, a master is not liable to his servant for an injury sustained by the negligence of a fellow servant. The only conflict among the authorities has arisen upon the application of this general rule to special cases. The exception, as it has sometimes been called, as now stated by the authorities, is that the master will be liable, unless the servant receiving

the injury, and the one by whose negligence it was caused, are both engaged under the same master in promoting one common object. The authority for this distinction is admitted by the *Wisconsin* case, but that it rests upon any sound principle is denied. If all the servants of one master were his slaves, or, in other words, his servants for any and all purposes, we do not see on what principle the distinction could be sustained. But in all the cases which are to be treated as authority, either by the evident consideration given to them by the court in which they were rendered, or by the respect in which they are held from the reputation of the court pronouncing the opinion, the servant has been such only as to his employment for a special object; and where another servant has been employed for a purpose entirely other and different, it may be well said that they are not fellow servants of one master. Each is but a servant for the purpose for which he is employed, and as to any other duties or dangers, not resulting from such employment, he is not a servant, and, therefore, for injuries sustained may hold the master responsible, upon the same ground that he would any stranger. Under the authorities, it is very clear that in the case under consideration the appellant is not liable.

In a very recent case in the Exchequer Chamber, in which the facts upon which the question of law arose are sufficiently stated in the opinion, ERLE, C. J., says:

" The plaintiff was employed by the railway company to do carpenter work, and he was so employed on the line of railway, and the wrongdoers were the porters, also in the employment of the company, who, in shifting a steam-engine on a turn-table, close to the shed on which the plaintiff was working, managed the business so negligently that the engine struck against the ladder which partly supported the plaintiff's scaffolding, and threw the plaintiff violently to the ground. The plaintiff and the porters were engaged in one common employment, and were doing work for the common object of their masters, viz., fitting the line for

traffic. On a suggestion put by my brother PIGOTT, Mr. *Macnamara* was driven to an answer, which (if it did not admit that it was the same thing) showed that he had difficulty in establishing any distinction whether the plaintiff was working close by, or whether he was employed on the turn-table. I think it can make no difference, and the rule which exempts the master from liability to a servant for injury caused by the negligence of a fellow servant applies. The principle on which this rule was established, as applicable to the present case, is very clearly put by BLACKBURN, J., in the judgment, to which MELLOR, J. agreed, in the court below: 'There are many cases where the immediate object on which the one servant is employed is very dissimilar from that on which the other is employed, and yet the risk of injury from the negligence of the one is so much a natural and necessary consequence of the employment which the other accepts, that it must be included in the risks which are to be considered in his wages. I think that whenever the employment is such as necessarily to bring the person accepting it into contact with the traffic of the line of a railway, risk of injury from the carelessness of those managing that traffic is one of the risks necessarily and naturally incident to such an employment, and within the rule.' The cases on this subject are extremely numerous, and have been closely examined, both here and in the court below, and I could not make the matter clearer by going through them. It is sufficient to say that I entirely agree with the judgment of the court below, that the facts of the case bring it within the rule exempting the master from liability." *Morgan* v. *The Vale of Neath Railway Co.,* Law Rep. 1 Q. B. 149.

So in a still later case in *England,* where the plaintiff was employed by a railway company as a laborer, to assist in loading what is called a "pick-up train" with materials left by plate-layers and others upon the line. One of the terms of his engagement was, that he should be carried by the train from *Birmingham,* where he resided, and

whence the train started, to the spot at which his work for the day was done, and be brought back to *Birmingham* at the end of each day. As he was returning to *Birmingham*, after his day's work was done, the train in which the plaintiff was, through the negligence of the guard who had charge of it, came into collision with another train, and the plaintiff was injured. Held, that inasmuch as the plaintiff was being carried, not as a passenger, but in the course of his contract of service, there was nothing to take the case out of the ordinary rule which exempts a master from responsibility for an injury to a servant through the negligence of a fellow-servant, when both are acting in pursuance of a common employment.

The *American* cases are in harmony with these rulings. *Farwell* v. *The Boston and Worcester Railroad Co.*, 4 Met. 49; *King* v. *The Boston and Worcester Railroad Co.*, 9 Cush. 112; *Gillshannon* v. *The Stony Brook Railroad Co.*, 10 *id.* 228; *Carle* v. *The Bangor and Piscataquis Canal and Railroad Co.*, 43 Maine 269; *Ryan* v. *The Cumberland Valley Railroad Co.*, 23 Penn. St. 384; *Wright* v. *The New York Central Railroad Co.*, 25 N. Y. 562; *Slattery's Adm'r* v. *The Toledo and Wabash Railway Co.*, 23 Ind. 81; *The Chicago and Great Western Railroad Co.* v. *Harney*, ante, p. 28.

We think that the evidence in this case does not estabish any liability against the railroad company, and that the motion for a new trial should have been sustained.

The judgment is reversed, with costs, and the cause remanded for a new trial.

*N. F. Malott*, *T. R. Coble* and *T. Gazlay*, for appellant.