JOHN HARDY, Adm'r., v. THE NORTH CAROLINA CENTRAL RAILROAD COMPANY.

To allow a break in the embankment of a railroad, caused by a storm and unprecedented freshet, to remain open for ten hours, without some one stationed at or near the place to warn passing trains·of the danger, is negligence which nothing can excuse.

The track of a railroad, and especially every exposed place, ought to be examined after every storm, before a train is allowed to pass; and if that is not done, and injury results, whether to passengers or servants on the train, the corporation is liable.

This was a CIVIL ACTION, for the recovery of damages, tried before *Henry J.* at December (Special) Term, 1875, of NEW HANOVER Superior Court.

The complaint alleges : That the plaintiff is the administrator of the estate of Arnold Hardy, deceased.

The defendant is a corporation under the laws of North Carolina, chartered for the purpose of building and carrying on a railroad, and on the day of the wrongful act, neglect and default complained of, was operating a railroad between Wilmington and Charlotte, North Carolina, and was a common carrier.

On the 17th day of June, 1874, Arnold Hardy, the intestate of the plaintiff, being then on a train of cars of the defendant on his way to Wilmington, N. C., by the wrongful act, neglect and default of the defendant, and of the servants and employers of the defendant, to-wit: the section master of one of the sections of the defendant's railroad, whose neglect of duty was and ought to have been known to the defendant, slain and killed.

The defendant committed a wrongful act, neglect and default by the selection and appointment of 'said section master, whose negligent character was and ought to have been known to the defendant, and by the continuation of the said section master in a responsible position after his negligent character became known to the defendant."

The complaint demands judgment for ten thousand dollars damages. ·

The answer of the defendant among other things alleges :

" That on the day alleged in the complaint, the said Arnold Hardy was on a train of cars of the defendant as a brakesman, in the employment of the defendant. His duty required him to be on the platform to tend the brakes while the train was in motion. He was then and had been for some time previous in the employment of the defendant as brakesman, receiving the rate of wages usually paid in that employment and with a full knoweldge of the risks incident to that service. Defendant denied that the intestate of the plaintiff was injured or killed by any wrongful act, neglect or default of the defendant, or

of the section master of any one of the sections of the defendant's railway, or by any wrongful act or default of any of the servants, agents ar employees of the defendant. Denies that the defendant committed any wrongful act, neglect or default in the selection or appointment of the said section master, or that the negligent character of the section master was or ought to have been known to the defendant, or that he was a person of negligent character, and avers that he was a competent and careful person of suitable skill and experience for such an appointment.

The defendant used due care, skill and diligence in the construction of its railroad: in keeping the same in repair; in ascertaining its condition, and in running its trains, and in the selection of its agents, servants and employees. Denies that the alleged death of the intestate of the plaintiff was in any way owing to or caused by the negligence or carelessness of the defendant, its agents or employees."

After the cause had been set for trial the plaintiff was allowed by the court to amend his complaint, so as to make the third paragraph thereof read as follows: "That on or about the 17th day of June, 1874, Arnold Hardy, the intestate of the plaintiff, being then on a train of cars of the defendant, on his way to Wilmington, N. C., was by the wrongful act, neglect and default of the defendant, slain and killed."

The defendant objected to the complaint, as amended, for the reason that it was too general, and did not inform the defendant of the charge brought against it; and moved that the plaintiff be required to specify the act or acts of negligence upon which he relied.

His Honor held that the complaint was sufficiently specific, and ruled the defendant to trial upon the amended complaint. The defendant excepted.

Pleasant Radcliffe, a witness for the plaintiff, testified: He lived in Anson county, four miles from Lilesville. The accident occurred in June, 1874. It commenced raining the even-

ing before, and rained heavily until about nine o'clock, when it began to rain very hard, and for two or three hours was the hardest rain he ever saw. The heavy rain seemed to extend two or three miles below, and about a mile and a half above, where the accident happened. The rain did great damage ; nearly all the crops were destroyed. About forty feet of the wood work and about thirty feet of the earth work of his mill-dam were torn away. The mill was about eight hundred yards, and his house about three quarters of a mile from where the accident happened. His dam had stood there about nine years, and no part of the wood work had ever been injured before. There was about twenty feet of the defendant's rail-road washed out. The train fell in there. At nine o'clock,. A. M., the next day, he was at his mill. Just before 10 o'clock, he went to stop the train. He saw it coming. about sixty yards off. He waved his handkerchief, and signed the engineer to stop; he saw it, but passed on. He was in about twenty feet of the train when it passed him. The engineer looked back, but did not stop. He did not blow for brakes. He was running faster than usual. They always blow brakes. down this grade. He was about eight hundred yards from the place of accident when the trained passed him. He did all he could to stop it, but could not. It was an excursion train. The engineer could have stopped the train if he had tried. This was between nine and ten o'clock, some five or six hours after day break. He went as fast as he could to the place of the accident. He saw the wreck, the engine was. down the embankment, the tender on top. One or two cars were off the track, and one had passed entirely over the wreck.. About twenty feet of the road was washed away, ten to fourteen feet deep. The dirt off the culvert was gone. He did not think the rocks were washed away. He did not think it rained after 11 o'clock the night before. It was made about 1855 or 1856, and was not then considered large enough by an engineer in charge of the work. In size, it was about two,

and a half by three feet. Ordinarily a small amount of water passed through the culvert. It was a small branch. He never saw the water accumulate there. The culvert is now much larger; it has been rebuilt since the accident. This embankment was made several years before the track was laid on it. In 1868 or 1869, Harvy finished up the grading. The culvert had given away at the lower end. He mended it with rock; did not tamper the dirt. He did not pack it, nor fill the holes. Rabbits used frequently to hide in the holes between the rock and the dirt. He had known Galvin, the engineer, for one or two years. He was a careful engineer. As soon as he got to the place, he went to him. They were taking him out of the wreck. He said, " I now see what you meant by your signs. I took them for salutes, as it was a big day."

One Sinclair testified: He was in the train. The train started from Polkton. It rained very hard at Polkton the night before. Polkton is about twelve miles from the place of the accident. He knew Arnold Hardy. He was a brakesman on the train. He was twenty-two or twenty-three years of age. He had been on the road more than a year. Hardy was the main train hand and baggage master. He stood well on the road, was a man of good character. Witness did not know what wages the company paid him. Such hands were getting $20 to $22 per month. At breakfast Galvin, the engineer, said he was going to make up time. It was down grade, and he was running fast when the accident occurred. Witness did not see the section master that day. He saw him afterwards on another section. The section master was provided with a hand-car, and could travel on it six or seven miles an hour. The section master lived two miles from the place of the accident. The section was nine or ten miles.

One Sharp testified: He had been a railroad man for twenty six years. He was section master on this road for nine months. He knew Honeycutt and his section He was off the road for some time after the accident occurred.

It is the custom of roads to require section masters to go over their sections after all storms, and look after its condition. It was a standing order on this road. He saw two dead men; the break was ten or twelve feet deep, and about sixty feet wide.

F. M. Wooten testified : He was the conductor on the train. He knew Arnold Hardy. He saw him on the train before he died, and after the accident. Arnold had charge of the baggage car, and was a brakesman. He was a very reliable man, and had been with the witness six months. Hardy did not live more than three hours. He was twenty-five or thirty years of age. His health was good. He was regular in the discharge of his duties. Witness had no notice that the road was washed up, and did not see Radcliffe that morning. The train was running at the usual rate, not over sixteen miles an hour. Galvin was one of the most careful engineers on the road, and was on that account selected to run the train on that day. Witness considered that portion of the road on which the accident occurred, in good repair. He passed over it the evening before. He thought it was in as good repair as any part of the old road. He had been running on it for two years, and had been conductor for nine years. There was a rain at Polkton the night before. The section master, Honeycutt, discharged his duty very well. There were signs of rain all the way from Polkton to the place of the accident.

One Baker testified: He was at Laurinburg, cleaning the engine that day. He had been on the road since 1868. He had noticed the place where the accident happened, often. One morning a car broke loose, and he got down to couple it, and when the engine moved he saw the dirt falling in the crack in the bank. The crack was five feet long, leading to the culvert. Arnold Hardy was on the train,. and the witness told him about it. He also told Galvin, the engineer. This was about three weeks before the accident occurred.

Radcliffe was recalled and testified that Honeycutt was retained by the defendant, as section master, after the accident.

R. Henry testified: He lives about three quarters of a mile from Lilesville. The rain the night before the accident was the hardest rain he ever saw fall. It rained hard from about 9 o'clock until 11 o'clock. The rain seemed to be confined to a space about two miles above, and about two and a half miles below the place of the accident. He was on the train that day. After the accident, Honeycutt, the section master, came down the road to another section. He was still employed by the defendant. The culvert was built by Neal, in the latter part of 1861. He had to alter it before the engineer would receive it. Atkinson was engineer; he was very careful. The clouds were very threatening the morning and night before the accident, coming from different directions, north and south.

S. L. Fremont, a witness for the defendant, testified: He has been General Superintendent and Chief Engineer of the road since 1870. He had passed that portion of the road very frequently, and made a special examination the day before the accident occurred, on account of the excursion train. The road was in excellent order. When he took charge of it this portion of the road was an old and well-settled embankment. The longer the embankment stands the firmer it becomes. Honeycutt's section was in good order, and the culvert sufficient to carry off the water. The culvert put there since the accident is thirty-three per cent. larger than the one which was there before. He has been engaged on railroads for twenty years. The section master is required to watch the track, and to go over it after every storm. He did not think the section master was to blame, after he had investigated the case. He kept him on the road afterwards. The road master telegraphed him the evening before, about four o'clock, to line the track on the trestle immediately east of Wadesboro, before the excursion train passed, the next morning. He understood that Honeycutt did not receive the tele-

gram until about dark.   The  work  could  not  be done after dark.   He  did  it  the  next  morning.   There was a section master for  every ten  miles, and  that was as  many as was required.   This was the number employed on railroads generally. At the place of  the  accident there was a valley, where much water might accumulate.   In making the inspection, he went over the road  in  a  superintendent's car.   He did not stop at the place of  the accident.   There is  a  seat on a platform, in the rear  of  the  car, made  for  the  purpose of enabling the superintendent to examine the road  as he passes over it.   He occupied this seat as he  passed  over  the road, and he went over the road for the express  purpose of making an examination of  its condition.

When asked why he thought no one was to blame, after he ascertained that Honeycutt was working  on  the  trestle, the witness replied : That  he  was  ordered  to  the trestle by the road-master and that one man could not  be  in two places at one time.   That if he  had  received  no  order  to go to that part of his section it would have  been  his duty to have gone there first any way, as that  was  a  part of the new road that had been very recently constructed, and upon which the track had been laid but a short time, when the accident happened on the old road where the embankment had been standing for years.   The road  master  Mulchaly,  had  charge  and supervision of  the road-bed and track over the whole line, and controlled the section masters, and appointed and discharged them at his pleasure.   Mulchaly was on the train of inspection with the witness and sent the telegram from Rockingham. He did not know what message the Road Master sent Honeycutt, or that he sent him any  message, and  did not so learn until after the accident had occurred.

Captain Everett testified :   He is  a  civil engineer and has been for fifteen years.   He had charge of  this portion of the road from 1866 until 1873.   This culvert was well constructed and in good condition up  to  1873, and  amply sufficient to

carry off all the water. It carried the water off for twelve years without any trouble. The culvert was made to carry off the water of two branches, but during the war the ditch was filled up, so that the water of the upper branch could not pass through it. This caused the water of the upper branch to flow along through its former channel. After the war instead of re-opening the ditch, another culvert was made to carry off the water of the upper branch, so that after that time the culvert where the accident occurred had to carry off the water of only one branch.

One Brown testified : He is a civil engineer and had charge of the road when the culvert was built. Atkinson was chief engineer. He objected to the culvert and Atkinson had it pulled down and re-built. He left before it was re-built. This was when it was first constructed.

Murdock Mulchaly testified : He is the Road Master. He appointed Honeycutt section master. He is a competent section master. Witness passed over the road with Fremont the day before the accident. He observed as he passed the long trestle just east of Wadesboro, that the track was not exactly in line. When he reached Rockingham about 3 o'clock in the afternoon he telegraphed to Honeycutt, " to line the track over the trestle just east of Wadesboro before the train passes in the morning." To do this would not have required more than an hour's work. He did not direct him to stop anything else.

One McKethan testified : He delivered the telegram from the Road Master to Honeycutt about dark. It was raining very hard. The witness received the telegram about four o'clock in the afternoon. It is about nine miles from Wadesboro to the place of the accident.

The counsel for the defendant requested the court to charge the jury :

1. If the defendant exercised reasonable care in the selection of the section master, Honeycutt, and if the jury should

be satisfied that the injury to the intestate of the plaintiff on the 17th day of June, 1874, was caused by the negligence of Honeycutt in not ascertaining and reporting the damaged condition of the roadway, before the train passed on the day aforesaid, the intestate of the plaintiff and Honeycutt both being at the time employees in the service of the defendant, one as brakesman and the other as section master, the plaintiff cannot recover.

2. If the section master was a fit and competent person, well qualified to discharge the duties of section master, and if the injury to the plaintiff's intestate was caused by the negligent act of the section master, at the time and in the manner aforesaid, they then being servants of the defendant, the plaintiff cannot recover.

3. That if the defendant used reasonable care in the selection of its engineer, conductor, section master and road master, and they were competent persons, well qualified to discharge the duties of their respective positions, then if the injury to to the plaintiff's intestate, (he then being a brakesman on the road of the defendant,) was caused by the negligent act or acts of any one of said employees or servants, on the day before mentioned, the plaintiff cannot recover.

4. That there is no evidence of any negligence on the part of Murdock Mulchaly.

5. If the jury should believe the testimony of Col. Fremont, that he, the General Superintendent and Chief Engineer of the Company, selected to be run on the day the injury was sustained by the plaintiff's intestate, a new and first-class engine in good order and condition, and a most skillful engineer was placed in charge of the same, and that he, the Superintendent, passed over and made an examination of the road the day before, and they should find from the testimony of Col. Fremont, Capt. Everett and others, that the railroad was well and properly constructed and in good order and condition, up to the time the roadway was washed out and the

break made in the embankment as discovered the day the injury was sustained, then although the train ran into the break made in the embankment and the plaintiff's intestate was thereby injured, still there was no such evidence of negligence on the part of the defendant as would entitle the plaintiff to maintain this action, and the plaintiff cannot recover.

7. If, upon the whole testimony, the jury should be satisfied that the road was well and properly constructed, and was in good repair and condition up to the time the roadway was washed out and the break made in the embankment, as discovered the day the injury was sustained, then, although the train ran into the break, so made in the embankment, and the plaintiff's intestate was thereby injured, the plaintiff cannot recover.

8. That if the railroad was out of repair, and in an unsafe condition at the place where the injury was sustained, and the plaintiff's intestate knew or was informed of this condition of the railroad and did not communicate this to the defendant, and still continued in the service of the defendant as brakesman, notwithstanding his knowledge of the unsafe condition of the railroad, the plaintiff cannot recover.

9. That if the railroad was out of repair and in unsafe condition at the place where the injury was sustained, and the plaintiff's intestate knew or was informed of this condition of said road, and still continued in the service of the defendant as brakesman, notwithstanding his knowledge of the unsafe condition of the railroad, the plaintiff cannot recover."

The plaintiff requested the court to charge the jury:

1. "If Mulchaly, being a superior and general officer of this company, having charge of its whole line, ordered the section master to work on a certain trestle, and by such order suspended the general regulation, requiring section masters to go over their line after every rain, and in consequence of this order the accident occurred, the defendant is liable.

2. That to allow a railroad track to remain broken and

washed away for a space of from twenty to sixty feet, until five hours after daylight, the crevasse having occurred the night before, without having ascertained the fact, and the failure to ascertain it, being in consequence of the orders of a general and superior officer of the company, rendered the company liable.

3. Every Railroad Company is expected to use reasonable care in watching its line, and thus preventing accidents. Where it appears that it was a standing order of the company for all section masters to go over their line frequently, and always immediately after a heavy rain, and this section master failed to do so, in consequence of orders from a superior general officer, this company is liable to an employee for an accident, which would not have occurred, had the track been examined as usual.

4. If Galvin, having had notice of the dangerous condition of the culvert, ran at more than ordinary speed, down grade, and after being warned by Radcliffe, the defendant is guilty of negligence.

5. If the defendant constructed its road with insufficient culverts, and over and around the culvert failed to pack the dirt, simply throwing some dirt on the sides, and merely covering up the holes without filling and packing them, and if the accident occurred by reason of the rain water washing against the road thus constructed, this will be negligence.

6. If the jury believe Gal Baker, then the dangerous condition of the road ought to have been known to the company, and its failure to make immediate repair, or at least to notify its engineers to run with caution, renders defendant guilty, and the plaintiff's intestate, though he knew it, is not guilty of contributory negligence.

7. If the section master was acting under the direct order of his superior officer, it is a matter of indifference whether he was competent or not."

His Honor refused the special instructions prayed for, as

well those of the plaintiffs as those of the defendant, and charged the jury : " That it was the duty of the defendant to have the road examined, after the rain. And if it failed to do so, (under the circumstances stated,) and put the train in motion, and it went down, they are responsible to every one on it, for any damage suffered, whether the person was a passenger or an employee."

To this charge of his Honor the defendant excepted.

The jury found all the issues in favor of the plaintiff, and rendered a verdict for two thousand dollars damages.

The defendant moved for a new trial. Motion overruled. Judgment and appeal by defendant.

*Strange* and *Battle, Battle & Mordecai*, for the appellant. *Russell*, *W. S. & D. J. Devane*, contra.

ᴿᴇᴀᴅᴇ J. There was an unprecedented rain and freshet. A culvert theretofore sufficient, was then insufficient to let the water pass; and thereby an embankment of the defendants road, ten feet high and sixty feet long, was washed away. About ten o'clock the next day, and some ten hours after the road was washed away an excursion train came on at the usual speed and pitched pell-mell into the gorge; and the intestate of the plaintiff who was a brakesman upon the train was killed.

Was this the result of negligence on the part of the defendant ? Or was it an unavoidable accident ? That is the only question. The defendant says, that the conductor, the engineer, the brakesman and other servants running the train were all skillful and careful, and knew nothing of the break in the road. That he had a skilful and attentive section master and hands to keep the road bed in order; and that if the section master had known of the break (which he did not) it was so large that all the hands on the road could not have repaired it in time ; and that the flood was unprecedented, and that the

break could not have been prevented. And so the defendant insists that he is not guilty of negligence.

The case was well argued, and there are full briefs on both sides, embracing the questions.

(1.) First, whether a servant of a road can recover of the corporation for injury sustained ?

(2.) Secondly, whether a servant can recover for injury resulting from the neglect of his fellow servant ?

(3.) Thirdly, whether the deceased was a fellow servant with the section hands to keep the road-bed in order, by reason that he was a servant on the train ?

(4.) Fourthly, whether if the defendant employed skillful and usually careful servants, he was liable for negligence in this, or in any given case ? These and other questions were fully considered. But the question upon which the case turns, is outside of all these. Concede everything in the defendant's favor but this ; was it not his duty to have some one at the break in the road to stop the train ? Unquestionably it was. Nothing else but that could have prevented the catastrophe, and that would have prevented it. To allow the gorge to stand for ten hours with no one to guard it ; and to allow the train on time, without warning, to pitch into it, was negligence which nothing can excuse. The track, and especially every exposed place, ought to be examined after every storm before a train is allowed to pass ; and if that is not done, and injury results, whether to passengers or the servants on the train, the corporation is liable.

No error.

PER CURIAM.                                        Judgment affirmed.