Owen Tuller *et al.*, Plaintiffs in Error, *v.* Rosannah Talbot, Defendant in Error.

ERROR TO CLARK.

Common carriers of persons are required to do all that human care, vigilance and foresight reasonably can, under the circumstances, in view of the character and mode of conveyance adopted, to prevent accidents to passengers.

Such a degree of vigilance is not required, as would be inconsistent with the mode of conveyance adopted, or as would render its use impracticable. Nor is the utmost degree of care which the human mind is capable of inventing, required; but the highest degree of practicable care and diligence under the circumstances of the case is necessary.

The proprietors of a stage line should furnish competent and careful drivers; and if a stranger shall be substituted by them or their agents in lieu of a regular driver, the proprietors are accountable for his neglect or incompetency.

It is not proper to allow counsel in argument to the jury, to read reported cases of a similar character; authorities should be read to the court, and the jury should be governed as to the laws of the case by instructions from the court.

This was an action commenced by Rosannah Talbot, against Owen Tuller and others.

The declaration states that defendants were owners of a stage coach for conveying passengers from Terre Haute to Trenton, Illinois, for hire; that plaintiff on the 10th of January, 1857, became a passenger, to be safely carried in said coach from Greenup to Terre Haute, for which she paid her fare; that defendants received her as a passenger, to be safely carried; that defendants did not use proper care, but neglected to do so; that while on the way the coach was, by the negligence and carelessness of the driver, the servant of the defendants, overturned, whereby plaintiff's collar bone was broken, and she was otherwise bruised and injured, and became sick, sore, and lame, and so continued until the commencement of the suit, whereby she suffered pain, was put to expense in the sum of two hundred dollars in endeavoring to be cured, and was prevented from prosecuting her journey, and was put to two hundred dollars expense in her support. Damages, five thousand dollars.

Plea, not guilty.

Trial by jury; verdict, $1,050.

Motion for a new trial. Because, 1st, verdict was contrary to law and evidence; 2nd, error in instructing the jury as prayed by plaintiff; 3rd, error in refusing defendants' instructions; 4th, error in mode of argument permitted; 5th, damages excessive.

New trial refused, and judgment for plaintiff below, Harlan, Judge, presiding.

Bill of exceptions shows that plaintiff took passage in de-

fendants' stage at Greenup, for Terre Haute ; paid her fare and that of her two sons.

The facts of this case show that plaintiff below was a passenger, with others, in a stage coach ; on arriving at a station, the regular driver was so unwell that it was deemed expedient to place the team under the management of one of the passengers, who represented himself as competent to drive, having had experience as a stage driver elsewhere. There had been a fall of snow, which obscured the inequalities and difficulties in the roadway.

The person driving did not take the accustomed track, and the coach was upset, greatly injuring the plaintiff below. There was proof showing that the person substituted for the regular driver, was placed in charge of the team by the regular driver, and the keeper of the station, who was accustomed to receive passenger fares, and who also kept the stage horses.

Exception was taken to the manner of argument permitted to plaintiff's counsel in summing up, in referring to the facts of reported cases, and claiming a verdict equal to that rendered in such cases.

Instructions prayed by the plaintiff, and given :

1.　That in order to entitle her to recover in this case, it is only necessary for her to prove that she took passage in the stage of the defendants at Greenup, for Terre Haute ; that it was upset, and that she thereby sustained some damage. The burthen of proof is then cast on the defendants, to show in mitigation of damages, or in bar of the action, that the driver was a person of competent skill, of good habits, and in every respect qualified for his business, and that he acted on the occasion in question with reasonable skill, and with the utmost prudence and caution.

2.　It is the duty of common carriers to do all that human care, vigilance, and foresight can do under the circumstances, and in view of the character of the mode of conveyance adopted, reasonably, to guard against accidents and consequential injuries, and if they neglected so to do, they are to be held strictly responsible for all consequences which flow from such neglect.

3.　It was the duty of the defendants to furnish in addition to a suitable and sufficient conveyance, a fully competent, careful, and trustworthy driver, and if they neglected to do so, and by reason thereof any injury resulted to the plaintiff, the jury must find for the plaintiff.

4.　If Ward drove the stage at the solicitation of the driver, who was sick, as a matter of accommodation to him, at the time the accident occurred, still if such accident was the result of

carelessness or a want of skill or due caution on the part of Ward, then the jury must find for the plaintiff.

5. In assessing damages it will be proper for the jury to take into consideration the expense borne by the plaintiff; the distance she was from her home and friends; the amount of suffering she has endured; the length of time she was confined to her bed; the amount of permanent injury she has sustained, and the nature and character of such injury, and to assess therefor such a sum as in their judgment, so far as money can, will compensate therefor.

6. If Ward, while driving the defendant's hack, in obedience to the request of the regular driver thereof, through carelessness or a want of skill deviated from the accustomed road when there was no obstruction therein, and in consequence thereof upset the hack, and injured the plaintiff, then the defendants are liable, and the jury should find for the plaintiff.

7. It was the duty of the defendants, if proven to be the stage coach proprietors, and carrying passengers, to provide competent and skillful drivers, who are well acquainted with the road, and if one is unable to drive, from sickness or other cause, to provide another who is not disabled, but is capable of discharging his duty in a competent and skillful manner, and any failure to do so, by which damages are occasioned to the plaintiff, the defendants are responsible for.

8. The upsetting of the stage coach in this case (if proven to the satisfaction of the jury) is *prima facie* evidence of negligence, and the plaintiff need prove nothing more; but it devolves on the defendant to prove that his driver acted with the utmost skill, prudence and caution, and that the injury sued for was occasioned without the least negligence or want of skill or prudence, on the part of the driver; and if the defendants fail to satisfy the jury that their driver exercised the utmost degree of care and skill and prudence, by reason of which failure the injury was occasioned, the defendants are liable.

The defendants excepted to the giving of each of the foregoing instructions, and prayed the following:

1. That if the jury believe, from the evidence, that the regular driver of the defendants, while driving the stage of the defendants, carrying the plaintiff, on the way, and at the stopping place at the village of Martinsville, became and was sick and unable to proceed on the journey in charge of the stage, in safety, and if he then abandoned the charge and control of the stage to a stranger and fellow passenger of the plaintiff, and if she, with a full knowledge of all these facts, left the said stopping place and went on the journey under the control of the said fellow passenger, and if, during the time the stage was so being driven

and controlled by said fellow passenger, the injury complained of happened to the plaintiff, she cannot recover, in this action, for said injury.

2. If the evidence in this case shows to the satisfaction of the jury that the stage of the defendant was not under the control of the defendants, or any driver of theirs at the time of the alleged injury to the plaintiff, but was at the time in the exclusive control of a fellow passenger of the plaintiff, she cannot recover, in this action, against the defendants for such alleged injury, caused by the overturning of the stage in the hands of a stranger.

3. If the jury believe, from the evidence, that the defendants' driver became sick and unable to proceed with the stage, and that the plaintiff, being aware of that fact, consented and desired that a fellow passenger should drive, which he did, and if, during such driving by him, the stage was overturned and the plaintiff injured, she cannot recover for such injury in this action.

4. If the jury believe, from the evidence, that, at a way-station, the defendants' driver became and was sick, and unable to proceed with the stage with safety, which the plaintiff knew, and so treated and regarded him, and if thereupon a fellow passenger took charge of the stage, and proceeded on the journey with plaintiff's consent, and at her request, and if, while the stage was so under his charge and conduct, it was overturned, and the plaintiff thereby injured, she cannot recover for such injury in this action.

5. That, though the law required of the defendants to exercise the "utmost care" in the transportation of the plaintiff, yet they were not bound to exercise the *utmost possible care*, nor did they insure to carry the plaintiff safely at all events. If the stage, in which the plaintiff was being carried, was overturned without the fault or want of skill, in any respect, of the driver, and only in consequence of the recent fall of snow filling the ditch by the side of the road, so that it could not be seen by the driver, and if the driver was using all due caution to avoid the ditch, and yet, by accident, and solely owing to the snow, the stage fell into it, the defendants have shown such care as will exonerate them from liability.

6. The court instruct the jury that, what any other jury may have done in any case, forms no criterion for the jury in this case, and any statement of counsel, in argument, of the supposed facts, before the juries, in the case of *McKinney* v. *Neill*, and *Peck* v. *Neill*, alleged to have been tried before Mr. Justice McLean, and the verdict of the juries in those cases, are to be wholly rejected by the jury in this case. This cause is to be

Tuller et al. *v.* Talbot.

tried by the jury upon its own merits, and not by the actions and verdicts of other juries, either as to damages or any thing else.

The court refused to give each of the instructions prayed by defendants, and they excepted.

The court gave to the jury so much of the 6th instruction prayed by the defendants, as follows : " The court instructs the jury that, what any other jury may have done in any case, forms no criterion for the jury in this case."

Assignment of Errors : Error in giving the eight instructions as prayed by the defendant in error below ; Error in refusing the six instructions prayed by the plaintiffs in error, and refused by the court below ; Error in permitting the mode of argument by the counsel of the defendant in error, in the Circuit Court, as set forth in the bill of exceptions ; Error in refusing the motion of the plaintiffs in error, for a new trial, and in rendering judgment on the verdict in the Circuit Court.

S. B. GOOKINS, for Plaintiffs in Error.

C. H. CONSTABLE, and O. B. FICKLIN, for Defendant in Error.

WALKER, J.   It is urged that the court erred in giving the second instruction asked by plaintiff below.   It assumes, as a legal principle, that common carriers of persons are required to do all that human care, vigilance and foresight reasonably can under the circumstances, and in view of the character and mode of conveyance adopted, to guard against accidents and consequential injury, and if they neglect to use such precaution, they are to be held strictly responsible for all the consequences which grow out of such neglect.   It is insisted that this rule is laid down too broad, when it requires all the care, vigilance and foresight of which the human mind is capable.   This is doubtless true, but in this case the rule was not so stated.   The instruction only requires this degree of care in reference to, and in view of the circumstances, and of the mode adopted, so as to guard against accident.   While courts, in announcing the rule governing common carriers of persons, have said that they must be held to the utmost degree of care, vigilance and precaution, it must be understood that the rule does not require such a degree of vigilance as will be wholly inconsistent with the mode of conveyance adopted, and render its use impracticable.   Nor does it require the utmost degree of care which the human mind is capable of inventing.   Such a rule would involve the expenditure of money and the employment of hands, etc., in repairing the public highway over which the carrier has necessarily to pass, so as to render it perfectly safe ; and would prevent all persons of ordi-

nary prudence from engaging in that character of business. But the rule does require that the highest degree of practicable care and diligence shall be adopted, that is consistent with the mode of transportation used. To require anything less, would be to leave the lives of persons in the hands of the reckless, and unprotected against the negligent and incautious. This instruction announces this rule and nothing more, and was therefore properly given.

It is likewise insisted, as Ward, who was also a passenger, was, at the time the accident occurred, acting as the driver, that the proprietors are therefore not responsible for the injury sustained by defendant in error. It was the duty of the proprietors of the stage line to furnish competent and careful drivers, and any neglect of that duty must render them liable for injuries sustained by passengers by reason of its omission. When Ward was permitted to drive the coach, to relieve the regularly employed driver that had been put in charge of the coach, he for the time being became their driver, and whether he undertook to drive at the request of the proprietors, their agents, or of the regular driver on the line, can make no difference. The driver was unwell when he left his station, and should have been relieved by the substitution of another competent driver, able to perform the duty. The proprietors, by themselves or their agents, have control of the horses and coaches, and when any one else is permitted to assume their control, such person is, for all purposes of a driver, their agent, and if incompetent, unskillful or careless, and injury results, the proprietors are liable for the damages to the same extent as if he were their regularly employed driver. They must also furnish drivers who are familiar with the road over which they have to pass, so that they may avoid the dangers incident to its travel. In this case it is apparent that if Ward had known the road, the accident would not have occurred. The evidence shows, that instead of passing upon the centre of the road at the place where the accident occurred, that the drivers on this line had been in the habit of traveling along and in the ditch at the side of the road. The horses being accustomed to that road, were constantly making efforts to get into it, while Ward was endeavoring to keep them in the centre of the road. It was this effort of the horses to get into the side track which carried the wheels of the coach over the bank of the ditch, and overturned it, which occasioned the injury of defendant in error. Had Ward been even as well acquainted with the road as were the horses, the accident would not have happened. This was one of the perils of the road that could not have occurred with a driver familiar to it, exercising ordinary prudence and care. And the plaintiffs

in error having failed to furnish such a driver, must he held liable to make compensation for damages resulting from that neglect of duty.

It was again insisted that the court erred in permitting counsel, in arguing the case before the jury, to refer to adjudged cases of a similar character. The correct practice in civil cases is never to permit counsel to read authorities to the jury. It is the duty of the court, when asked, to instruct the jury as to what the law is, as applicable to the case, and it is their duty to receive it as given, and apply it to the facts of the case, as they may find them. Such a practice would be to appeal to the jury to determine what the law is, which is beyond their province, and would be calculated to render the administration of justice uncertain, and should therefore not be permitted. But in this case it does not appear that counsel read law to the jury, or read from adjudged cases. Reference was only made to them for illustration, and the court, to prevent its having any improper influence upon the minds of the jurors, very properly instructed them that they should disregard these cases in forming their verdict.

The record presents no error requiring the reversal of the judgment of the Circuit Court, and it is therefore affirmed.

*Judgment affirmed.*