## Augustus S. Libby *vs*. Maine Central Railroad Company.

## Cumberland.   Opinion August 13, 1892.

*Railroad.   Negligence.   Road-bed.   Inspection.*

The law requires common carriers of passengers to do all that human care, vigilance and foresight can, under the circumstances, considering the character and mode of conveyance, to prevent accident.

While they are held to the utmost care which is consistent with the business in which they are engaged, they are not to be held as against every possible danger, nor are they to be held accountable for not taking every possible precaution against danger and accident.

They are bound to use greater than ordinary care; it must be such care as is used by very cautious persons.

So, in the construction of their road-bed, track and culverts, railroad companies are held to that degree of care and foresight which will avoid such dangers as can be reasonably foreseen or ascertained by competent and skillful engineers, as liable to result from rainfalls and freshets incident to the particular section of country through which they are constructed.

But it is not culpable negligence on the part of a railroad company in the construction of its road-bed, track and culverts, if it has failed to provide against such extraordinary and unprecedented storms, floods, or other inevitable casualties caused by the hidden forces of nature, unknown to common experience, and which could not have been reasonably anticipated by that degree of engineering skill and experience required in the prudent construction of such railroad.

Moreover it is the duty of a railroad company, in order to be assured that its line is in a reasonably safe condition, to make as frequent inspection of its road-bed and track as can be done consistently with the conduct of its business.

Under circumstances of more than ordinary peril, the company should inspect its line with more than ordinary promptitude, particularly those portions which are the most liable to injury by storm or flood.

The greater the peril, the greater the vigilance demanded.

On motion.

This was an action on the case by the plaintiff, a postal clerk and route agent, to recover damages received by the negligence of the defendant. The second count in the writ alleges as follows:

"Also for that the defendant on the 10th day of June, A. D., 1889, was the owner of a railroad extending from the city of

Portland in the county of Cumberland to the town of Skow-hegan in Somerset county, by the way of the city of Lewiston in Androscoggin county and the town of Oakland in Kennebec county, and the defendant on said 10th day of June, was running a train over said railroad route carrying passengers and United States mail, which mail then and there required the attendance of postal clerks or route agents, and it was then and there the duty of the defendant to keep the road-bed and track. of its said road, including all its culverts and water passages under said road, in a proper condition so that all the defendant's trains passing over said road-bed would be safe to all persons riding or passing thereon. But said defendant on said 10th day of June, 1889, did not properly discharge its duty in this respect, but carelessly and negligently allowed said railroad bed, track and culverts under said road-bed, to be defective and unsafe, and particularly the culvert at Crowell's Brook, so-called, in said Oakland, so much so that said culvert at said Crowell's Brook was then unfit to carry or vent the water naturally in said brook running under said road-bed, and said culvert had been in said defective condition for a long time prior thereto, whereby and by means whereof the water naturally flowing to said culvert did not pass under said culvert freely, but said water then and by the aforesaid carelessness of said defendant washed through the road-bed of said railroad at said culvert causing a deep cut or wash-out through said road-bed into which said train then and there plunged and fell.

"The plaintiff further declares that in said train and a part of it there was a postal car in which was being carried the United States mail, and the plaintiff was then and there a postal clerk and route agent in the employment of the United States government, in charge of said mail, and in said postal car, and said postal car was then and there thrown into said cut or wash-out, and by means thereof the plaintiff then and there was crushed between the cars and engine of said train and five ribs of the plaintiff were broken, his right lung was punctured, causing great loss of blood, his skull was injured, his nose broken and he received numerous other serious wounds and

injuries in other parts of his body, whereby he has suffered great pain and incurred great expense in attempting a cure of his injuries thus by him sustained."

The plea was the general issue.

The verdict was for the plaintiff for nine thousand five hundred and fifty-eight dollars, which the defendant moves to set aside on general motion and because of excessive damages.

The other facts appear in the opinion.

*S. S. Brown, N. & H. B. Cleaves, and S. C. Perry,* for plaintiff.

*Webb, Johnson and Webb,* for defendant.

Defendant used a commendable degree of skill, prudence, and vigilance in the construction and management of its road; plaintiff's misfortunes were the result of inevitable accident of which passengers assume the risk, and for which defendant is not liable. Defendant not liable for the act of God, or *vis major.*

Counsel cited: *Crosby* v. *Fitch,* 12 Conn. 410; *Bowman* v. *Teall,* 23 Wend. 306; *Swetland* v. *B. & A. R. R.* 102 Mass. 276; *McPadden* v. *R. R. Co.* 44 N. Y. 478; *R. R. Co.* v. *Reeves,* 10 Wall. 176; *R. R. Co.* v. *Halloren,* 53 Tex. Rep.; 3 Am. & Eng. R. R. cases, 343; *Cooley* Torts, § 642; *R. R. Co.* v. *Fay,* 16 Ill. 558; *Bowen* v. *R. R. Co.* 18 N. Y. 441; Shear. and Red. on Neg. § § 206, 445, 266, 269, 270, 444; Angell Car. § § 538, 540; *Livezey* v. *Phila.* 64 Penn. 106; *R. R. Co.* v. *Thompson,* 56 Ill. 138; *Gleeson* v. *R. R. Co.* 28 Am. and Eng. R. R. cases, 202; *Denny* v. *R. R. Co.* 13 Gray, 481; *Gillespie* v. *R. R. Co.* 6 Mo. 554; Pat. Ry. Acc. Law, § 286; *Gates* v. *R. R. Co.* 2 Am. and Eng. R. R. Cases, 237; *R. R. Co.* v. *School District, Ib.* 166; S. C. 96 Pa. St. 65.

Damages are excessive. The charge was very clear. It especially warned the jury not to give excessive damages if they found for the plaintiff, for if they did, it would be the duty of the court to set it aside. But the jury utterly disregarded the advice of the court, and became partisan as between an individ-

ual as plaintiff and a corporation as defendant. The plaintiff may soon be a well man. He is unable, with great research, to find a physician who will say that he will not soon be well. We submit that the verdict should be set aside; that the culvert was properly constructed, and was in proper condition.

The jury did not discriminate between the condition of the culvert before the accident and its condition after.

The evidence is very strong, and by disinterested witnesses, that the culvert was in good repair before the accident.

The defendant, or its agents, had no knowledge of any improper construction or dangerous condition, or want of repair, and maintain that none such existed. There was no failure on part of defendant to provide a suitable and reasonably safe culvert. The accident could not have been prevented by ordinary care on part of defendant. The defendant is only held to ordinary care. It is not an insurer.

FOSTER, J. This is an action to recover damages for injuries sustained by the plaintiff through the alleged negligence of the defendant corporation, in the construction and maintenance of a culvert upon the line of its road at Crowell's Brook, between North Belgrade and Oakland. Negligence is also alleged on the part of the defendant in the inspection of its road and road-bed in that vicinity; and that in consequence of the negligence and carelessness of the defendant, on the tenth day of June, 1889, the culvert at the place named together with a portion of the defendant's road-bed was washed out, thereby causing a deep cut, ditch or wash-out in the road-bed into which the defendant's train, upon which the plaintiff in the discharge of his duty as postal clerk, was thrown, and in consequence thereof the plaintiff received severe injuries.

A verdict was rendered for the plaintiff for the sum of $9558, which the defendant moves to set aside.

To understand more accurately the legal position of the parties to this suit, the following summary of facts is gleaned from the evidence.

On the day in question, the defendant's regular passenger and

mail train left Portland for Skowhegan at 1.15 P. M., was due at North Belgrade at 3.59 P. M., and Oakland at 4.08 P. M. The distance between North Belgrade and Oakland is four and one-tenth miles, and the culvert at Crowell's Brook is about equally distant from each place.

Soon after the train left Portland it began to rain, and showers were frequent from Portland to North Belgrade, and when the train reached the latter place the rain had nearly ceased.

Between North Belgrade and Oakland the track runs along the border of Snow pond, from which the land rises gradually to the northwest for a distance of about one mile, forming a water-shed of nearly four miles in length on the pond and extending back on an average for about one mile. The land is mostly tillage and pasture. In this space of four miles between North Belgrade and Oakland, there are five natural brooks draining this territory and emptying into Snow pond. Over these brooks the Androscoggin and Kennebec Railroad company built culverts when it constructed its road in 1849. These five culverts have stood from the time they were constructed to the present time, except the one at Crowell's brook, which, on the day this accident occurred, was washed out and sixty feet of the road-bed carried away, by an unprecedented rainfall in that immediate locality. The evidence shows that there appeared to be a conjunction of clouds going in opposite directions, emptying volumes of water upon this brook, causing it to over-flow its banks, the quantity of water being greater than could have been discharged through three culverts of the size of this one, which had vented the water of this brook for more than forty years. The water thus restrained formed a pond from ten to fourteen feet in depth, and instantly washed out the embank-ment and culvert, tearing down more or less of the wall and removing some of the covering stones. This occurred but a short time before the regular train was due, and there was no notice of the wash-out by any employee of the railroad or any other person. The section men were at work within twenty rods of the culvert at the time the shower commenced, and returned to the car house near the station at Oakland, where

they remained until it had passed. There was nothing unusual in the character of the shower at Oakland where the men were, nor did the train men observe along the route any unusual signs indicating any more than an ordinary rainfall. The path of the rain torrent seemed to pass from the northwest to southeast, down this brook and over the pond.

No serious controversy arises in reference to the general principles of law by which the liability of the railroad company is to be tested.

It is not denied that the defendant company owed the same degree of care to this plaintiff while riding in the postal car in charge of mails that it did to passengers upon the train. *Blair* v. *Erie Railway Co.* 66 N. Y. 313.; *Baltimore & Ohio Railroad Co.* v. *State*, 72 Md. 36.

A carrier of passengers, however, is not, like a common carrier of goods, an insurer against everything but the act of God and public enemies. The law requires common carriers of passengers to do all that human care, vigilance and foresight can under the circumstances, considering the character and mode of conveyance, to prevent accident to passengers. To require anything less would be to leave the lives of persons in the hands of the reckless, and unprotected against the negligent and incautious. *Tuller* v. *Talbot*, 23 Ill. 357 ; *Ingalls* v. *Bills*, 9 Met. 1, 15 ; *Bowen* v. *New York Central Railroad Co.* 18 N. Y. 408, 410. But while public policy and safety require of common carriers of passengers that they be held to the utmost care which is consistent with the business in which they are engaged, they are not to be held as against every possible danger, nor are they to be held accountable for not taking every possible precaution against danger and accident. If they were required to do that, it would be to hold them insurers to the same extent as carriers of goods, and compel them to adopt a course of conduct inconsistent with the economy and speed which are essential to the dispatch of their business in serving the public. *Simmons* v. *New Bedford and Nantucket Steam Boat Co.* 97 Mass. 361, 367 ; *Pittsburg, Cinn. & St. Louis R. R. Co.* v. *Thompson*, 56 Ill. 138 ; *Warren* v. *Fitchburg Rail-*

*road Co.* 8 Allen, 227, 233. These authorities and the decisions therein referred to, sustain the doctrine that railroads and steamboat companies which are common carriers of passengers are held to that degree of care which prudent men would make to guard against all dangers, from whatever source arising, which may naturally and according to the usual course of things be expected to occur. They are not insurers of the safety of their passengers further than can be required by the exercise of such a high degree of foresight and prudence in reference to possible dangers and in guarding against them as would be used by very cautious, prudent, and competent persons under similar circumstances. The rule, though somewhat differently expressed, is thus stated in *Warren* v. *Fitchburg R. R. Co.* 8 Allen, 227, 233 : "But they are bound," say the court, "to exercise reasonable care, according to the nature of their contract; and as their contract involves the safety of the lives and limbs of their passengers, the law requires the highest degree of care which is consistent with the nature of their undertaking." In our own state the rule was stated in *Edwards* v. *Lord*, 49 Maine, 279, that they are bound to use greater than ordinary care — such care as is used by very cautious persons. In *Tuller* v. *Talbot*, 23 Ill. 357, the rule is fully stated in the following language : "While courts, in announcing the rule governing common carriers of persons, have said, that they must be held to the utmost degree of care, vigilance, and precaution, it must be understood that the rule does not require such a degree of vigilance as will be wholly inconsistent with the mode of conveyance adopted and render it impracticable. Nor does it require the utmost degree of care which the human mind is capable of imagining. Such a rule would require the expenditure of money and the employment of hands, so as to render it perfectly safe, and would prevent all persons of ordinary prudence from engaging in that kind of business. But the rule does require that the highest degree of practicable care and diligence should be adopted that is consistent with the mode of transportation adopted." Elementary writers and the general current of decided cases sustain this doctrine. Shear. and Red. Neg. § 265 ; Angell on Carriers, §

§ 568, 570 ; Red. on Railroads, c. XXVII ; 2 Am. and Eng. Enc. of Law, 746, 758 ; *Simmons* v. *New Bedford & Nantucket Steamboat Co. supra ; Ingalls* v. *Bills, supra ; Taylor* v. *Grand Trunk Railway Co.* 48 N. H. 304 ; *Warren* v. *Fitchburg R. R. Co. supra ; Hall* v. *Conn. River Steamboat Co.* 13 Conn. 320 ; *McElroy* v. *Nashua & Lowell R. R. Co.* 4 Cush. 400 ; *Readhead* v. *Midland Railway Co.* L. R. 4 Q. B. 379 ; *Stokes* v. *Eastern Counties Railway Co.* 2 Fost. and Finl. 691.

Great care is required from railroad companies in the construction of their roads, but absolute liability for defects has never been charged upon them. Not only must the road be properly constructed, but it must be kept in good condition. In this respect, as well as all others, they are bound to provide against dangers which can reasonably be foreseen. Accidents may happen, notwithstanding the utmost care and diligence are exercised to prevent them. They are bound to exercise that degree of care and skill which cautious persons would use, in the construction, by competent engineers and workmen, of the road-bed, track, culverts and all the appliances and means of transportation to carry on the business of the road and operate its trains ; to make frequent, careful examinations and inspections of the same, in order to avoid accidents as far as human skill and foresight can reasonably secure such a result. *Bowen* v. *New York Central Railroad Co. supra ; International & Great Northern R. R. Co.* v. *Halloren*, 53 Texas, 343. And in the construction of their track, road-bed, and culverts they should be required so to construct them as to avoid such dangers as could be reasonably foreseen or ascertained by competent and skilful engineers, as liable to result from rain-falls and freshets incident to that particular section of country through which they are constructed. Dangers which might reasonably be expected to occur from these sources, though rarely, should be guarded against. *Great Western Railway Co.* v. *Fawcett*, 1 Moore, P. C. (N. S.) 101. Thus, in the last cited case, which was appealed from the province of Canada, and heard before the judicial committee of the Privy Council, it was held that a railway company, in the formation of its line, is bound to construct

its works in such a manner as to be capable of resisting all extremes of weather, which in the climate through which the line runs might reasonably be expected, though rarely, to occur. But that where the company had employed skilful engineers, and used all ordinary precautions in the construction, to have the work done properly, and the giving way of the road-bed was caused by a storm of unusual magnitude, these facts should be brought to the attention of the jury upon the question whether the company was negligent in the construction of the road.

But a company would not be guilty of such culpable negligence as to make it liable in damages, if it failed to provide against such extraordinary and unprecedented storms, floods or other inevitable casualties caused by the hidden forces of nature, unknown to common experience, and which could not have been reasonably anticipated by that degree of engineering skill and experience required in the prudent construction of such railroad. In such case the injury cannot be held to be attributable to any fault or negligence of the company; it results from inevitable accident — *vis major* — the act of God.

This is now too firmly established by the highest courts in this country and in England to require any extended citation of authorities.

It was in accordance with this principle that in the English court of Exchequer, *Withers* v. *North Kent Railway Co.* 3 Hurlst. & N. 969, was decided.

In that case, it was shown that the railroad was laid on an embankment built of sandy soil, in a marshy country subject to floods, and that the culverts were insufficient at times to carry off the water. But it did not appear that the embankment had ever been affected by floods, although it had been in use for five years, until the night upon which the plaintiff was traveling, in which an extraordinary flood had carried away the soil from under the track, and the cars were thrown off. It was held that this was no evidence of negligence, and that the verdict was unwarranted. "It is contended on the part of the plaintiff," says Bramwell, B., "that the company's servants were bound to know the consequences which were likely to follow from the flood. That is

not so. They were bound to know only that which could be known by the exercise of ordinary skill and prudence, otherwise they would be made insurers of the safety of the passengers. There was no engineering or other skilled evidence to show that water would wash away the soil of which the embankment was made. So far from there being any evidence to show that there was negligence, there was evidence to negative the negligence imputed. The very existence of the line for five years, notwithstanding that the district was subject to floods, tended to negative the only negligence which was set up. There was nothing to show that until the accident occurred there had been anything to indicate danger, or to warn the company's servants to cease running the trains." In support of the doctrine laid down in this case may be cited cases both English and American, a few of which are the following : *Readhead* v. *Midland Railway Co*. L. R. 2 Q. B. 412, affirmed by the Exchequer Chamber, L. R. 4 Q. B. 379, and overruling the earlier case of *Sharp* v. *Grey*, 9 Bing. 457 ; *Stokes* v. *Eastern Counties Railway Co*. 2 Fost. & Finl. 691 ; *Christie* v. *Griggs*, 2 Camp. 79 ; *Grote* v. *Chester & Holyhead R. Co*. 2 Exch. 255. In this country, *Simmons* v. *New Bedford & Nantucket Steamboat Co. supra* ; *Gillepsie* v. *St. Louis & Kan. City R. Co*. 6 Mo. 554, where the road-bed washed out from under the ties in consequence of an extraordinary flood, whereby the road gave way and an injury resulted ; *Baltimore & Ohio R. R. Co*. v. *School District*, 96 Pa. St. 65 ; *Gulf C. & S. F. R. Co*. v. *Pomeroy*, 67 Texas, 498 ; *Same* v. *Pool*, 70 Texas, 713 ; *McPherson* v. *St. Louis I. M. & S. R. Co*. 97 Mo. 253 ; *Sawyer* v. *Hannibal, &c., R.* 27 Mo. 240.

We have already stated some of the important facts in this case bearing upon the defendent's liability. The rain-fall was not only extraordinary, but unprecedented. It came suddenly and the shower lasted about two hours. Nothing like it, as the testimony shows, had occurred for more than fifty years. It was much more severe at this particular locality, than at the stations of North Belgrade or Oakland, only two miles distant from it.

The culvert, built at the time the road was constructed in

1849, had stood for more than forty years, and never, in all that time, had it failed to discharge all the water flowing to it.   While the testimony of engineers differs as to what should have been the proper capacity of the culvert, one fact is pertinent and significant, that its capacity has been sufficient for the purposes for which it was built for a very long number of years.   To be sure, it was not built of dimension stone split from the quarry, but of large split bowlders.   But the testimony not only of the engineer in charge of the work at the time of its construction, but of others, skilled in such works, shows that the material used was suitable and proper, everything considered, and that the culvert was properly built.   The evidence, it is true, on this point, as well as in reference to the proper capacity of this culvert, is not in harmony.   Engineers, skilled in their profession, differ in their judgment upon these questions.   We cannot say from all the evidence before us that the railroad company must be considered in fault in respect to the construction of this culvert.  Human judgment may err.  We think the care exercised in the construction of the culvert brings it within the rules of law to which we have referred.

The test of liability is not whether the company used such particular foresight as is evident, after the accident happened, might have averted it, had the danger been known, but whether it used that degree of care and prudence which very cautious and prudent persons would have used under apparent circumstances of the case to prevent the accident, without reasonable knowledge that it was likely to occur.   *Bowen* v. *New York Central Railroad Co.* 18 N. Y. 408.   "In such a case," says Bramwell, B., in *Cornman* v. *Eastern Counties Railway Co.* 4 Hurlst. & N. 781, 786, "it is always a question whether the mischief could have been reasonably foreseen.   Nothing is so easy as to be wise after the event."

When we come to consider the question whether there was proper inspection of the road-bed and culvert at that point before the accident, we enter upon more debatable ground.   There were five section men who had started out at one o'clock and were at work surfacing and lining up the track within twenty or

twenty-five rods of this culvert, and they remained there till about half-past two o'clock, and then returned to the Oakland car house. It had begun to rain. They saw the shower come up. They remained in the car house till four o'clock. It was not raining hard at that time. The regular passenger train was due in a very few minutes. The foreman of the crew started out saying he would go down and look at the switches at the lower end of the yard, and see if it had washed out around them. He soon came back and the crew were still in the car house. It was then he first learned from the station agent that there was trouble at Crowell brook.

In order that a railway company may be assured that its line is in a reasonably safe condition, the duty devolves upon it of causing as frequent inspection of its road-bed and track as can be done consistently with the conduct of its business. A neglect of such duty renders the company liable to any one injured by reason of any defect which might have been discovered by such inspection. Moreover, under circumstances of more than ordinary peril, as in case of violent storms, the company should inspect its lines with more than ordinary promptitude, particularly those portions which are the most liable to injury by storm or flood. The greater the peril, the greater the vigilance demanded. The authorities certainly go to this extent. Some impose a more stringent rule, holding that inspection should be made both during and after extraordinary storms in order to prevent accidents. *International & Great Northern R. Co.* v. *Halloren*, 53 Texas, 343 ; *Hardy* v. *North Carolina Central R. Co.* 74 N. C. 734.

Whether there was such promptitude of inspection, by those whose duty it was to make it, as the exigencies of the occasion demanded, is a question upon which the court is not unanimous in its opinion.

It is asserted on the part of the defendant company that there was nothing either in the nature or severity of the shower at Oakland where the section men were, to attract their attention. They certainly knew it was a severe shower, — the hardest, the foreman says, he ever knew, — so hard he thought it necessary

to go out and examine the switches in the yard to see if they were not washed out. They knew that there were several culverts upon that part of their section, and that there was an extensive watershed which emptied into this particular culvert. They knew the regular passenger train was due about the time they left the car house. Notwithstanding all this they remained in the car house an hour and a half, and until it was too late to avert the disaster which happened.

The case is one not absolutely free from doubt in some of its bearings. The damages are large. Yet, after a very careful examination of the evidence, a majority of the court are of the opinion that the verdict may stand if the plaintiff will remit all above six thousand dollars within thirty days after decision announced; otherwise a new trial is to be granted.

*Judgment accordingly.*

VIRGIN, LIBBEY, HASKELL and WHITEHOUSE, JJ., concurred.