## VOIGHT v. BALTIMORE & O. S. W. RY. CO.

(Circuit Court, S. D. Ohio, W. D.   March 29, 1897.)

No. 4,932.

1. RAILROADS—INJURY TO EXPRESS MESSENGER.

While a railroad company is under no obligation to carry an express messenger as such, yet when under a contract with the express company it does carry him it is discharging its function as a common carrier of persons, and he does not lose his rights and character as a passenger because he travels in a special car provided by the railroad company.

2. SAME—CONTRACT EXEMPTING FROM LIABILITY.

A contract whereby a passenger on a railroad train agrees not to hold the railroad company liable for injury to him caused by the negligence of the company or its servants is void, as against public policy, and this rule applies to an express messenger carried by a railroad company in a special car, under a contract with the express company.

This was an action at law by William Voight against the Baltimore & Ohio Southwestern Railway Company to recover damages for personal injuries.   The case was heard on demurrer to the answer.

Plaintiff's petition alleges that on the 30th of December, 1895, he was traveling as a passenger for hire, being an express messenger, on a train of the defendant company; that through the negligence of the defendant and its servants the train upon which he was riding collided with another train of the defendant, whereby he suffered serious and permanent injuries, for which he asks damages. The defendant answered, and its second defense was as follows: "(2) For a second and further defense this defendant says that on said 30th day of December, 1895, it was, and for a long time prior thereto had been, a corporation duly organized under the laws of the state of Ohio, engaged in the operation of its railroad extending from Cincinnati, Ohio, to St. Louis, Missouri, and to other places, and was so engaged at the time of the collision set forth in plaintiff's petition. Defendant says that theretofore, to wit, on the 1st day of March, 1895, it entered into a contract with the United States Express Company, a joint-stock company duly authorized by law to carry on the express business, and to enter into such contract, whereby it was agreed between said express company and this defendant, among other things, that it would furnish for said express company on defendant's line between the city of Cincinnati and said city of St. Louis certain cars adapted to the carriage of such express matter as said express company should desire to have transported over said line in said cars. Defendant says it was part of said contract that one or more employés of said express company, known as messengers, should accompany said goods in said cars over the said line of this defendant's railroad, and for such purpose be transported therein free of charge, and that it was further provided in said contract that said express company should protect this defendant and hold it harmless from all liability it might be under to such employés for any injuries they might sustain while being transported by this defendant over its said line for the purpose aforesaid, whether said injuries were caused by the negligence of this defendant or its employés or otherwise. This defendant further says that in pursuance to its said contract with said express company it placed upon its line of railroad between Cincinnati and St. Louis for said express company certain cars known as 'express cars,' and was hauling one of said cars in one of its trains on said 30th day of December, 1895, at the time said collision occurred. Defendant says that prior to said 30th day of December, 1895, the said plaintiff made application to the United States Express Company in writing for employment by it as an express messenger; and in pursuance to said application said plaintiff was, prior to and at the time of said collision, so employed by said express company under a certain contract in writing, by the terms whereof plaintiff did assume the risk of all accidents and injuries which he might

79 F.—36

sustain in the course of his said employment, whether occasioned by negligence, and whether resulting in death or otherwise, and did undertake and agree to indemnify the said express company from any and all claims that might be made against it arising out of any claim or recovery on his part, or on the part of his representatives, for any damages sustained by him by reason of any injury, whether such injury resulted from negligence or otherwise, and did agree to pay the said express company on demand any sum which it might be compelled to pay in consequence of any such claim; and did further agree to execute and deliver to the corporation operating the transportation line upon which he might be injured a good and sufficient release, under his hand and seal, of all claims, demands, and causes of action arising out of any such injury, or connected with or resulting therefrom; and did further ratify all agreements made by the said express company with any transportation line in which said express company had agreed, or might agree, that the employés of said express company should have no cause of action for injuries sustained in the course of their employment upon the line of such transportation company. Said plaintiff did further agree to be bound by each and every of such agreements as fully as if he were a party thereto, and did further agree that his said agreement should inure to the benefit of any corporation upon whose line said express company should forward merchandise, as fully and completely as if made directly with such corporation. Defendant says that at the time the plaintiff sustained the injuries complained of herein, if any such were sustained, he was in an express car being transported by this defendant over said line from Cincinnati to St. Louis, in pursuance to said contract between said express company and this defendant, and said plaintiff was at the time of said collision upon said car in pursuance to his said contract with said express company, and not otherwise." Plaintiff demurs to the foregoing, on the ground that it constitutes no defense in law to the case stated in the petition, and thus arises the issue here to be decided.

C. M. & E. W. Cist, for plaintiff.

Harmon, Colston, Goldsmith & Hoadly, for defendant.

TAFT, Circuit Judge (after stating the facts). It seems to be well settled that an express messenger, though carried in a special car, when carried under a contract with a railroad company made by the express company for the transportation of express matter in his charge, is a passenger for hire. Fordyce v. Jackson, 56 Ark. 594, 20 S. W. 528, 597; Blair v. Railroad Co., 66 N. Y. 313; Brewer v. Railroad Co., 124 N. Y. 59, 26 N. E. 324; Kenney v. Railroad Co., 125 N. Y. 422, 26 N. E. 626; Pennsylvania Co. v. Woodworth, 26 Ohio St. 585; Railroad Co. v. Thomas, 79 Ky. 169; Jones v. Railway Co., 125 Mo. 666, 28 S. W. 883; Yeomans v. Navigation Co., 44 Cal. 71; Railway Co. v. Ketcham, 133 Ind. 346, 33 N. E. 116; Chamberlain v. Railroad Co., 11 Wis. 238; Railway Co. v. Wilson, 79 Tex. 371, 15 S. W. 280. Postal clerks, whose relation to the railroad company is analogous to that of the express messenger, are also accorded the same rights as passengers for hire. Seybolt v. Railroad Co., 95 N. Y. 562; Nolton v. Railroad Co., 15 N. Y. 444; Magoffin v. Railway Co., 102 Mo. 540, 15 S. W. 76; Mellor v. Railway Co., 105 Mo. 455–460, 16 S. W. 849; Jones v. Railway Co., 125 Mo. 666, 28 S. W. 883; Hammond v. Railroad Co., 6 S. C. 130; Libby v. Railroad Co., 85 Me. 34, 26 Atl. 943; Railroad Co. v. Kingman (Ky.) 35 S. W. 265; Baltimore & O. R. Co. v. State, 72 Md. 36, 18 Atl. 1107; Railway Co. v. Wilson, 79 Tex. 371, 15 S. W. 280; Railway Co. v. Ketcham, 133 Ind. 346, 33 N. E. 116; Railroad Co. v. Shott (Va.) 22 S. E. 811; Collett v. Railroad Co., 16 Adol. & E.

(N. S.) 984; Arrowsmith v. Railroad Co., 57 Fed. 165; Gleeson v. Railroad Co., 140 U. S. 435, 11 Sup. Ct. 859. A passenger for hire is entitled to the highest degree of care and skill from the railroad company in the management of its trains and the preservation of his safety. If the plaintiff was a passenger for hire, then a stipulation by the common carrier whose passenger he was, exempting the carrier from responsibility for its negligence or that of its servants, was void, according to the unbroken line of authorities in the supreme court of the United States. Railroad Co. v. Lockwood, 17 Wall. 359; Liverpool & G. W. Steam Co. v. Phenix Ins. Co., 129 U. S. 397, 9 Sup. Ct. 469; Inman v. Railway Co., 129 U. S. 128–139, 9 Sup. Ct. 249; Phœnix Ins. Co. v. Erie & W. Transp. Co., 117 U. S. 312, 322, 6 Sup. Ct. 750, 1176; Hart v. Railroad Co., 112 U. S. 331–338, 5 Sup. Ct. 151; Railway Co. v. Stevens, 95 U. S. 655; Bank of Kentucky v. Adams Express Co., 93 U. S. 174–183; Railroad Co. v. Pratt, 22 Wall. 123, 124; Express Co. v. Caldwell, 21 Wall. 264–268. In the case at bar, according to the averments of the answer now under consideration, the express company guarantied the railroad company against any damage to it arising from suits for personal injury by the employés of the express company. By contract between the express company and the plaintiff, the plaintiff agreed to release all right of action which he might have against the railroad company for negligence, and stipulated that his agreement with the express company should inure to the benefit of the railroad company. These two contracts are, in effect, the same as a contract made directly with the railroad company by the messenger, whereby he agrees not to hold the railroad company liable for injury to him caused by the negligence of the company or its servants. In so far as they have this effect, they are void, because against public policy. Railroad Co. v. Lockwood, 17 Wall. 359. They do not, therefore, constitute a valid defense to the action of the plaintiff, to recover damages for injuries caused by the negligence of the defendant company.

The argument of defendant's counsel against the demurrer may be stated thus: The rule of public policy which renders invalid a stipulation by a common carrier, restricting its liability for loss caused by its negligence or that of its servants, applies only to those duties which it is bound to perform as a common carrier. Whenever that which it engages to do is something which it is not under obligation as a common carrier to do, it has the same freedom of contract as a private carrier for hire, and may therefore exempt itself by stipulation from liability for its own negligence or that of its servants. In the case at bar, the defendant company was not under any common-law obligation to furnish express facilities to the express company whose employé the plaintiff was. If, then, the express business is not performed by the railroad company as a common carrier, but under special contract, it must be done by it as a private carrier. Hence the conclusion is said to follow that the messenger was carried by the railroad company as a private carrier, under a special contract with the express company, under which the railroad company might lawfully exempt itself from liability arising from negligence of itself

or that of its servants. The argument of counsel is sustained by the decision of the supreme court of Indiana in the case of Railway Co. v. Keefer, decided in October, 1896, and reported in 44 N. E. 796. The facts of that case are not to be distinguished from the one presented on this demurrer. With deference to that court, I find it impossible to follow the reasoning upon which this conclusion is based. It is based upon distinctions supposed to be established by the supreme court of the United States in the Express Cases, 117 U. S. 1, 6 Sup. Ct. 542, 628. The cases cited in the beginning of this opinion clearly establish the fact that the relation between the railroad company and the express messenger, where there is no contract exempting the railroad company from liability, is that of a public carrier to a passenger for hire. The supreme court of the United States in the Express Cases, 117 U. S. 1, 6 Sup. Ct. 542, 628, did not decide that the express business was not the business of a common carrier. The plain intimation of the opinion of the court was that the express business had become such a necessity that it was the duty of a railroad company to furnish express facilities to the public; but the point in judgment was that a railroad company was not obliged to furnish to an independent express company means for carrying on the express business upon its road. The court held that the railroad company was not a common carrier of common carriers, and that it sufficiently complied with any obligation which it was under to the public to furnish to them express facilities, if it made a contract with one company to do all the express business upon its road. It follows from that case that, if a railroad company chooses to do its own express business, it may exclude all express companies from its line. The case does not decide that the railroad company, when it contracts to transport the express matter of an express company, is not discharging its duty as a common carrier in offering the public express facilities. It is true that it is under no obligation to carry an express messenger as such. It may stipulate with the express company that it will provide one of its own servants to take charge of the express matter while upon its trains. But when it does carry an express messenger, it is discharging its function as a common carrier of persons. An express messenger is not a different kind of freight from an ordinary passenger upon its passenger train, except that he travels in a special car provided by the railroad company. He would have the right to demand of the railroad company that he should be carried in the passenger train if he tendered his fare. If the company, in order to discharge its duty to the public to afford express facilities upon its line, agrees to carry him in a special car in a passenger train, he does not thereby lose his rights and character as a passenger. This may be seen from the ruling of the supreme court in an analogous case. A railroad company is a common carrier of cattle. It is under no obligation to carry drovers to attend the cattle. It may assume this duty itself, and provide servants of its own to water and care for the live freight. When it does, however, make a contract allowing a drover to ride upon its cattle train, furnishing as one of the terms of the con-

tract of affreightment free transportation for the purpose, he is carried as a passenger for hire by the railroad company as a common carrier. The reason is that the railroad company is bound to carry the drover if he presents himself and pays his fare upon its passenger trains, and if, for any purpose of its own, the railroad company sees fit to allow the drover to ride upon its freight trains, though it is not under any obligation to carry him upon such trains, in doing so it does not lose the character of a common carrier carrying a passenger for hire. Railroad Co. v. Lockwood, 17 Wall. 359. A common carrier is allowed to make any reasonable stipulation restricting its liability to a shipper or to a passenger, and in this wise it may cut down its liability to exactly that to which a private carrier for hire would be subject; but this does not make the common carrier a private carrier, so as to escape the rule of public policy which forbids the common carrier from stipulating against liability for its own negligence.

If, then, a railroad company in carrying an express messenger for an express company is a common or public carrier of a passenger for hire, the railroad company cannot, by restricting its liability for injury to the messenger, change its character as a common carrier.

In Railroad Co. v. Lockwood, Mr. Justice Bradley, in delivering the opinion of the supreme court, used this language:

"It is argued that a common carrier, by entering into a special contract with a party for carrying his goods or person on modified terms, drops his character, and becomes an ordinary bailee for hire, and therefore may make any contract he pleases; that is, he may make any contract whatever because he is an ordinary bailee, and he is an ordinary bailee because he has made the contract. We are unable to see the soundness of this reasoning. It seems to us more accurate to say that common carriers are such by virtue of their occupation, not by virtue of the responsibilities under which they rest. Those responsibilities may vary in different countries, and at different times, without changing the character of the employment. The common law subjects the common carrier to insurance of the goods carried, except as against the act of God or public enemies. The civil law excepts also losses by means of any superior force and any inevitable accident. Yet the employment is the same in both cases. And if by special agreement the carrier is exempted from still other responsibilities, it does not follow that his employment is changed, but only that his responsibilities are changed. The theory occasionally announced, that a special contract as to the terms and responsibilities of carriage changes the nature of the employment, is calculated to mislead. The responsibilities of a common carrier may be reduced to those of an ordinary bailee for hire, while the nature of his business renders him a common carrier still. Is there any good sense in holding that a railroad company, whose only business is to carry passengers and goods, and which was created and established for that purpose alone, is changed to a private carrier for hire by a mere contract with a customer, whereby the latter assumes the risk of inevitable accidents in the carriage of his goods? Suppose the contract relates to a single crate of glass or crockery, while at the same time the carrier receives from the same person twenty other parcels, respecting which no such contract is made, is the company a public carrier as to the twenty parcels, and a private carrier as to the one? On this point there are several authorities which support our view, some of which are noted in the margin. A common carrier may, undoubtedly, become a private carrier, or a bailee for hire, when, as a matter of accommodation or special engagement, he undertakes to carry something which it is not his business to carry. For example, if a carrier of produce, running a truck boat between New York City and Norfolk, should be requested to carry a keg of

specie, or a load of expensive furniture, which he could justly refuse to take, such agreement might be made in reference to his taking and carrying the same as the parties chose to make, not involving any stipulation contrary to law or public policy. But when a carrier has a regularly established business for carrying all or certain articles, and especially if that carrier be a corporation created for the purpose of the carrying trade, and the carriage of the articles is embraced within the scope of its chartered powers, it is a common carrier, and a special contract about its responsibility does not divest it of the character."

It is quite true that the railroad company is not obliged to furnish a special car for the express messenger, but when it does so then it assumes the relation of a common carrier to the messenger carried, because he is one of the public whom the railroad company is bound to carry in some kind of a car. There is no such difference in the risk of carrying the express messenger and the ordinary passenger in the same train as there is between the risk to the owner of a truck boat in carrying a keg of specie or a load of expensive furniture and that involved in carrying the produce which he holds himself out to transport. In Bates v. Railroad Co., 147 Mass. 255, 17 N. E. 633, it was held that an express messenger who was riding on a ticket in the baggage car providing that, in consideration of being allowed to ride in the baggage car, the messenger would assume all risks of accident and injuries received by him while so riding, was a valid contract, exempting the railroad company from an injury received by the messenger through the negligence of the company; and a similar ruling was made in the case of Hosmer v. Railroad Co., 156 Mass. 506, 31 N. E. 652. The conclusion of the court was based on the fact that the place where the plaintiff was riding was one in which the defendant was not under obligation to carry him. The contract gave him the privilege which he sought for his own convenience. I think that the Bates Case and the Hosmer Case are not in accord with the decisions of the supreme court of the United States. First, the contracts did not expressly exempt the railroad company from accidents occurring through its own negligence, and yet they were given that effect, which is in conflict with the decision of the supreme court in the case of New Jersey Steam Nav. Co. v. Merchants' Bank, 6 How. 383. Secondly, the cases cannot be reconciled with the decision in Railroad Co. v. Lockwood, in which the plaintiff, a drover, was allowed to ride upon a freight train, a much more dangerous place than the passenger train, to which the railway company might have compelled him to resort had it seen fit to do so, and yet he was still treated as a passenger for hire, who on grounds of public policy was not permitted to barter away his right to the care of the railway company in his transportation. There is a class of cases upon which defendant's counsel rely, known as the "Circus Cases," the first of which is Coup v. Railway Co., 56 Mich. 111, 22 N. W. 215. This is followed in Railroad Co. v. Wallace, 14 C. C. A. 257, 66 Fed. 506, and Robertson v. Railway Co., 156 Mass. 525, 31 N. E. 650. In these cases the railroad company agreed to haul over its road the train of cars belonging to the circus proprietor, and containing the animals and the company of persons

engaged in the circus. It was held that the railway company might exempt itself from liability for the negligence of itself and its servants in the hauling of the circus train. Without deciding that, under the rules of public policy enforced in the federal courts, such a contract could be held valid, it is sufficient to say that the cases are clearly distinguishable from the one at bar. In them, the contract of the railway company was not one of carriage; it was merely one of hauling or towing cars by the locomotives of the railway company. The freight and passengers were not intrusted to the railway company in the manner in which the merchandise and passengers received by a common carrier are intrusted to it. Transportation Line v. Hope, 95 U. S. 297, 300; Bank of Kentucky v. Adams Express Co., 93 U. S. 174, 184. The railway company might refuse absolutely to receive the cars of the circus company and to haul them. The railway company did not hold itself out as engaging in the business of hauling or towing.

The demurrer to the second defense of the answer is sustained, and the case will stand for trial on the issues made by the other defenses.