## Belle Lanham, Appellee, v. Illinois Central Railroad Company, Appellant.

1. DAMAGES—*evidence.* Where plaintiff in attempting to board a passenger car attached to a freight train was thrown against the side of the car, evidence that plaintiff did not consult a physician until three or four weeks after the accident and that though she then consulted several physicians she made no complaint to any of them as to a miscarriage is insufficient to sustain plaintiff's contention that a miscarriage resulted from the injury.

2. CARRIERS—*degree of care required.* Where plaintiff was injured while attempting to board a passenger car attached to a freight train, an instruction that the railroad company is held to the same accountability for the negligence of its servants resulting in injury to a passenger for hire, who is lawfully and properly on a freight train, as governs its liability for such negligence when the transportation is upon a train devoted exclusively to passenger service, is erroneous since it fails to recognize the mode of conveyance adopted and the practical operation of the road.

3. CARRIERS—*degree of care toward passengers.* The highest degree of practicable care or diligence must be adopted that is consistent with the mode of transportation used.

Appeal from the Circuit Court of McLean county; the HON. COLOSTIN D. MYERS, Judge, presiding. Heard in this court at the October term, 1912. Reversed and remanded. Opinion filed April 18, 1913.

CHARLES L. CAPEN, for appellant; JOHN G. DRENNAN, of counsel.

M. A. BRENNAN, for appellee.

MR. JUSTICE CREIGHTON delivered the opinion of the court.

This was an action on the case brought by the appellee against the appellant company, to recover for personal injuries alleged to have been sustained by appellee while attempting to board a coach on the rear of a freight train on appellant's road.

Upon a hearing the jury returned a verdict against the appellant and in favor of the appellee, in the sum of $3,000. After overruling motions for new trial and in arrest of the judgment, the trial court entered a judgment in the amount of the verdict, and thereupon this appeal was granted and has been perfected.

The injury complained of occurred at Colfax, a station on the road of the appellant, on the 26th day of October, 1910, while appellee was attempting to board a passenger coach on the rear end of a freight train. While the evidence as to the occurrence is somewhat conflicting as to the material points connected with the accident, it is uncontroverted that appellee had gone to the station of appellant in advance of the approach of the train, and, together with a number of other passengers, came forward to board the train immediately after the coach came up to the station. One or more passengers immediately got aboard in advance of the appellee. Just as appellee had taken hold of the hand rail and placed her feet upon the lower step of the coach, the train lurched forward and then moved back a distance of from two to four feet, appellee lost her balance and her feet slipped from the step and fell to the ground and her body went against the side of the coach and she held on to the railing with her hand or hands. She was immediately assisted by a gentleman present and went aboard the train, and complained of being frightened. As she was assisted aboard the train it was standing still and remained so for a short space of time, variously estimated at from one and one-half to fifteen minutes.

It is contended by appellant that the only motion of the coach after it drew up in front of the station was the natural rebound incident to the stopping of the engine, the forward movement of the train against it and the rebound of from two to two and one-half feet, and that appellee attempted to enter the train before the coach had stopped, or at the time of the rebound immediately after stopping. The appellee contends that when she first sought to board the coach it was standing still upon the track, but that before she had time to get aboard, the car lurched backward and threw her against the side of the car and caused the injury complained of.

Mrs. Dunlap, a witness, testified that she was approaching the train from the station behind appellee and just prior to her effort to board the train; that as appellee took hold of the railing and placed her feet upon the lower step of the car, the car lurched backward three or four feet, throwing appellee's feet upon the ground; that a gentleman picked her up and helped her to board the car, and that the witness then boarded the car which remained standing on the track for ten or fifteen minutes; that the movement of the train backward and then forward, left the coach near where it first stopped; that she knew nothing about the "slack" of trains, but had seen other trains stop that way.

Grace Waunderland and Mary Strickland each testified that they were approaching the depot crossing just as the freight train pulled across the walk before it stopped; that they went around the rear of the train, and just then appellee stepped up and took hold of the hand rail on the rear of the coach, and that just as she stepped upon the step of the car the train stopped and there was a jar which threw her feet off the step and that she still had hold the hand rail with one hand.

The appellee contends that the train pulled up in front of the station and the coach stopped still and that

other passengers went aboard the train and that she attempted to follow; that when she had taken hold of the rail and had her feet upon the lower step, the train made a ''jiggle'' and threw her against the car; that the motion of the car was backward and then forward; that she could not tell how long the train remained standing still after she went into the coach.

B. M. Judd, a merchant at Colfax, who chanced to be passing near the train at the time of the accident, testified that the train pulled up in front of the station and was standing there when he saw appellee attempt to get aboard the car; that she had hold of the railing and one foot on the step of the car when the train came back and threw her; that he picked her up and put her aboard the car and that in about two minutes the train pulled out.

Upon the question of whether appellant was guilty of negligence at the time of the injury, and as to whether or not appellee was, at the time, in the exercise of due care and caution for her own safety, the evidence is, to say the least, very unsatisfactory.

As to the extent of the injury complained of, the evidence is also conflicting and unsatisfactory.

First, the appellee, in addition to the injury to her arm and shoulder, complains that at the time of the injury she was pregnant, having become so about three months before the accident, and that in consequence of such accident a miscarriage resulted and she was sick for a long space of time, and was under the care of a physician all the time and in a hospital at different times, and as a result is now permanently disabled.

The facts disclosed by this record upon that point are, that on the 26th day of October, 1910, the injury complained of occurred. On Sunday following, she contends, a miscarriage took place. At the time of the alleged miscarriage there was no physician present or consulted, the only person present at the time being a daughter-in-law of appellee. The symptoms and

evidence of miscarriage stated by appellee and her daughter-in-law, were severe pains and the passage of blood clots, and afterwards a flooding, and that appellee was confined to her bed for the space of between two and three weeks; that appellee consulted Dr. Langstaff within three or four weeks after the miscarriage, and visited Dr. Schultz early in November after the accident, and Dr. McIntosh about the middle of December, and went to see Dr. Horine on the 7th day of December, but the record fails to show that appellee made any complaint to any of these physicians as to the miscarriage, but did complain as to an injury to her arm and shoulder and received treatment for same, except that she told Dr. Horine she had become unwell the day before, and asked him to treat her for excessive discharges; that on the 31st of December of the same year, appellee called upon Dr. Myer, of Bloomington, and there, for the first time, made known her contention that a miscarriage had occurred, and that the doctor prescribed for and treated her at intervals until February, and advised her to go to the hospital, where she went and remained eight or ten days, and then the doctor found blood clots and flooding, and again in early spring, she was in the hospital under the treatment of the same physician; that the daughter-in-law who attended appellee at the time of the alleged miscarriage, testified that there was no foetus or other substance, except blood clots and blood passed, and that she removed and washed the cloths.

Dr. F. C. Vandervort, a physician of twenty-four years' experience, testified, as an expert, as follows: "If there had been a miscarriage on Sunday after the accident and the plaintiff was three months pregnant, there would have been a discharge of the foetus and afterbirth; that the foetus would have been of the shape of a little man or woman two or three inches long, with head the size of a walnut." Dr. Horine also testified to the same effect. If a miscarriage had occurred

within a week after the accident, it is hardly reasonable to suppose that in the various consultations she had with physicians, appellee would not have disclosed the full extent of her injury. It will be remembered that appellee called upon Dr. Schwartz in November and complained to him that she had received an injury to her arm and shoulder in the accident, and he told her to go to appellant's physician; that in December, on the 7th day of that month, appellee went to Dr. Horine and explained to him the nature of the injury to her arm and shoulder, and he treated her for same. In the conversation with him at that time he suggested to appellee that she file a claim against appellant for the injury, and appellee said, "No, it was not serious, and beside that, that appellant was not to blame." About the middle of December appellee consulted Dr. McIntosh and complained to him of the injury to her arm, saying nothing at all about the miscarriage.

From this record we are unable to accept the theory of appellee's miscarriage in consequence of the injury complained of.

Under this state of facts, it was very important and necessary to the ends of justice, that the law be given to the jury accurately. Instruction No. 2, given on behalf of appellee, is as follows: "The railroad company is held to the same accountability for the negligence of its servants resulting in injury to a passenger for hire, who is lawfully and properly on a freight train, as governs its liability for such negligence when the transportation is upon a train devoted exclusively to passenger service."

It is contended by appellant that the giving of this instruction was error.

In *Tuller* v. *Talbot*, 23 Ill. 357, in discussing the question of the degree of care required at the hands of a carrier of passengers for hire, the court lays down the following rule: "The highest degree of practicable

care or diligence shall be adopted that is consistent with the mode of transportation used.''

In *North Chicago St. Ry. Co.* v. *Polkey,* 203 Ill. 225, the court held that a street railway company owes the highest degree of care for the safety of its passengers consistent with the mode of conveyance employed, the practical operation of its road and the exercise of its business as a carrier.

In *Tri-City Ry. Co.* v. *Gould,* 217 Ill. 317, the court, in speaking of an instruction there under consideration said: ''The second instruction is erroneous, because it does not limit the degree of care, required of the carrier, to such care as is consistent with the practical operation of the road.   *   *   *   The instruction should have read as follows: 'The defendant, through its servants in charge of such car, was required to do all that human care, vigilance and foresight could reasonably do, in view of the character and mode of conveyance adopted, and consistently with the practical operation of the road, to safely carry him as such passenger.' ''

In *Ratner* v. *Chicago City Ry. Co.,* 233 Ill. 169, both of the above cases quoted from are cited with approval.

Instruction No. 2, here involved, under the rule laid down by our Supreme Court, must be held to have been improperly given because of its failure to recognize the mode of conveyance adopted and the practical operation of the road.  This instruction is calculated to impress the jury that the same certainty and accuracy in starting and stopping and the comfort and safety attends one who is traveling upon a freight train as attends upon the operation of a passenger train.  It fails to recognize the purpose and object of the operation of a freight train and the practical operation of the railroad.

In view of the amount of the judgment, the conflict in the evidence and the contest upon the facts, the in-

structions should have been accurate, clear and free from anything tending to confuse and mislead the jury.

Because of the above error the judgment is reversed and the cause will be remanded.

*Reversed and remanded.*